No. 25-_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*IN RE* META PLATFORMS, INC.,

*Petitioner.*

META PLATFORMS, INC.

*Petitioner-Defendant,*

v.

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

JANE DOE I, JOHN DOE I, JOHN DOE II, JANE DOE II,
JANE DOE III, JOHN DOE III, JOHN DOE IV,

*Real-Parties-in-Interest-Plaintiffs.*

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

Andrew B. Clubok
Nicolas Luongo
LATHAM & WATKINS LLP
1270 Avenue of the Americas
New York, NY 10020

Melanie M. Blunschi
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Gary Feinerman
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

*Counsel for Petitioner Meta Platforms, Inc.*

July 7, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner Meta Platforms, Inc. certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

*/s/ Gary Feinerman*
Gary Feinerman
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

*Counsel for Petitioner Meta Platforms, Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF CONTENTS...................................................................... ii

PRELIMINARY STATEMENT .............................................................1

RELIEF SOUGHT ............................................................................3

ISSUE PRESENTED ..........................................................................3

FACTUAL AND PROCEDURAL BACKGROUND ...............................3

REASONS FOR GRANTING THE WRIT.............................................11

I. THIS COURT SHOULD GRANT MANDAMUS TO RESOLVE AN ENTRENCHED SPLIT IN THE LOWER COURTS...................................13

    A. District Courts Are Deeply Divided On How To Apply The Apex Doctrine ...............................................................................13

    B. Mandamus Is Needed To Resolve The Split.......................................16

II. THE DECISION BELOW IS CLEARLY ERRONEOUS AS A MATTER OF LAW AND SHOULD BE CORRECTED.............................18

    A. Possessing Final Decisionmaking Authority Cannot Itself Overcome The Apex Doctrine ...........................................................19

    B. This Case Exemplifies The Flawed, Tautological Reasoning That Has Taken Hold In Some District Courts ...................................21

III. THERE ARE NO OTHER ADEQUATE MEANS OF RELIEF .................24

CONCLUSION .................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Cnty. of Contra Costa*,
  2017 WL 930315 (N.D. Cal. Mar. 9, 2017) ......................................................16

*Barnes v. Sea Hawaii Rafting, LLC*,
  889 F.3d 517 (9th Cir. 2018) ........................................................................12, 18

*Bauman v. U.S. Dist. Ct.*,
  557 F.2d 650 (9th Cir. 1977) ........................................................................11, 21

*Beeman v. Protective Life Corp.*,
  2020 WL 13656058 (N.D. Ala. May 28, 2020) ............................................9, 19

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
  2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ......................................6, 19, 20, 23

*City of Las Vegas v. Foley*,
  747 F.2d 1294 (9th Cir. 1984) ...........................................................................17

*Credit Suisse v. U.S. Dist. Ct.*,
  130 F.3d 1342 (9th Cir. 1997) ...........................................................................12

*Doble v. Mega Life & Health Ins.*,
  2010 WL 1998904 (N.D. Cal. May 18, 2010) ...................................................14

*Drake v. Steak N Shake Ops., Inc.*,
  2018 WL 3625769 (E.D. Mo. July 30, 2018) ....................................................20

*Finisar Corp. v. Nistica, Inc.*,
  2015 WL 3988132 (N.D. Cal. June 30, 2015) ..................................................1, 6

*Frasco v. Flo Health Inc.*,
  No. 21-cv-00757 (N.D. Cal. Feb. 8, 2023), Dkt. 269 ........................................16

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ............................................................................16

*In re Kirkland*,
  75 F.4th 1030 (9th Cir. 2023) ................................................................13, 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 10967617 (N.D. Cal. Aug. 1, 2011) .........................................2, 9, 19

*In re U.S. Dep't of Educ.*,
  25 F.4th 692 (9th Cir. 2022) ...................................................................3, 18, 25

*In re Williams-Sonoma, Inc.*,
  947 F.3d 535 (9th Cir. 2020) ........................................................................24, 25

*Kadrey v. Meta Platforms, Inc.*,
  2024 WL 4293910 (N.D. Cal. Sept. 24, 2024)...................................................15

*LA Terminals, Inc. v. United Nat'l Ins.*,
  2022 WL 1637206 (C.D. Cal. Jan. 28, 2022)......................................................14

*LocusPoint Networks, LLC v. D.T.V. LLC*,
  2015 WL 5043261 (N.D. Cal. Aug. 26, 2015)....................................................20

*Metabyte, Inc. v. Meta Platforms, Inc.*,
  2025 WL 799040 (N.D. Cal. Mar. 13, 2025) ......................................................15

*Naylor Farms, Inc. v. Anadarko OGC Co.*,
  2011 WL 2535067 (D. Colo. June 27, 2011) ......................................................21

*Newmark Realty Cap., Inc. v. BGC Partners, Inc.*,
  2018 U.S. Dist. LEXIS 17786 (N.D. Cal. Feb. 1, 2018) ..............................14, 19

*Patagonia, Inc. v. Anheuser Busch, LLC*,
  2020 WL 12048987 (C.D. Cal. Nov. 23, 2020) ..................................................13

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) .............................................................13, 16, 17

*River City Testing v. Cohen*,
  2021 WL 4805443 (C.D. Cal. July 8, 2021)..................................................14, 22

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
  187 F.3d 1096 (9th Cir. 1999) ...........................................................................18

*Schneider v. Chipotle Mexican Grill, Inc.*,
  2017 WL 4127992 (N.D. Cal. Sept. 19, 2017)...................................................15

*SG Cowen Sec. Corp. v. U.S. Dist. Ct.*,
   189 F.3d 909 (9th Cir. 1999) .................................................................16, 17, 25

*Total Recall Techs. v. Lucky*,
   No. 15-cv-02281 (N.D. Cal. Sept. 22, 2020), Dkt. 292......................................15

*United States v. Fei Ye*,
   436 F.3d 1117 (9th Cir. 2006) ...........................................................................17, 25

*United States v. Harper*,
   729 F.2d 1216 (9th Cir. 1984) ...........................................................................12

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
   2015 WL 13949662 (N.D. Tex. Dec. 7, 2015).....................................................15

## STATUTES

28 U.S.C.
   § 1291...................................................................................................................16
   § 1292(a)(1)..........................................................................................................17
   § 1292(b)...............................................................................................................16
   § 1651...................................................................................................................11

## RULES

Fed. R. Civ. P.
   30(b)(6)...........................................................................................................6, 10, 24
   54(b).....................................................................................................................17
   72(a) ......................................................................................................................9

## TREATISES

16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure
   § 3935.3 (2d ed. 2009) .........................................................................................17

## PRELIMINARY STATEMENT

This petition for a writ of mandamus implicates a critically important question of first impression in this Court: how to properly apply the "apex doctrine" in deciding whether to permit depositions of high-level business executives. District courts in this Circuit are deeply divided on the issue, which will evade appellate review unless this Court intervenes on mandamus.

The governing standard itself is familiar. To guard against "abuse," the apex doctrine bars depositions of high-level business executives, unless (1) they possess "unique firsthand, non-repetitive knowledge" of relevant facts and (2) "less intrusive discovery methods" have been exhausted without success. *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, *1 (N.D. Cal. June 30, 2015). But how to apply the doctrine properly is unsettled, as district courts disagree about whether an executive's status as a final decisionmaker on pertinent company policies or actions itself justifies an apex deposition.

In this case, the District Court (DeMarchi, M.J., and Orrick, D.J.) held that the chairman and CEO of Meta Platforms Inc., Mark Zuckerberg, must sit for a deposition "by virtue of his role" as "a decision maker regarding certain privacy-related matters at issue." Dkt. 967 at 3; *see also* Dkts. 1025, 1049, 1082.[1]

---

[1] References to "Dkt." refer to docket numbers in the District Court. *In Re Meta Pixel Healthcare Litigation*, No. 22-cv-03580 (N.D. Cal.).

Several more district courts have relied on similar logic to reach the same conclusion, including as to Mr. Zuckerberg himself. *See infra* at 13-15. But other district courts in this Circuit—some in cases also involving Mr. Zuckerberg—have explicitly and correctly rejected this reasoning as tautological, since *any* apex executive, by definition, is a final decisionmaker. *See id.*

Under the reasoning adopted by the District Court here, the very status that triggers the apex doctrine in the first place—being a high-level executive who exercises final decisionmaking authority—itself overcomes the doctrine's protections. That reasoning "eviscerate[s] the apex doctrine" and leaves executives like Mr. Zuckerberg exposed to abuse and harassment in nearly every case brought against their companies. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 10967617, at *2 (N.D. Cal. Aug. 1, 2011). That is an intolerable result. Large enterprises face scores of lawsuits at any given juncture, and their leaders have uniquely crucial and demanding job duties, as well as limited time. The apex doctrine shields them from the burdens of litigation in all but the most compelling circumstances. It is up to this Court to restore the doctrine's vital protections.

Absent mandamus, the proper scope of the apex doctrine will not be addressed at the appellate level. Because discovery-related matters are unreviewable on direct appeal after final judgment—or even on interlocutory appeal—this Court routinely grants mandamus to consider such issues, especially those that have divided district

courts. In fact, the Court recently granted mandamus to enforce analogous protections against unwarranted depositions of high-level government officials. *See In re U.S. Dep't of Educ.*, 25 F.4th 692, 703 (9th Cir. 2022). The Court should now do the same for high-level business executives. Meta has no other adequate means of relief, and Mr. Zuckerberg's deposition is plainly unwarranted under the circumstances of this case.

## RELIEF SOUGHT

Petitioner Meta Platforms, Inc. respectfully requests that this Court issue a writ of mandamus directing the District Court to vacate the Magistrate Judge's March 14, 2025 and May 15, 2025 orders (Dkts. 967, 1025) compelling Mr. Zuckerberg to sit for a deposition, along with the District Judge's June 3, 2025 and June 24, 2025 orders (Dkts. 1049, 1082) denying relief from those decisions.

## ISSUE PRESENTED

Whether the apex doctrine permits the deposition of a high-level corporate executive on the theory that, as a final decisionmaker, the executive is the only person who can testify to the decisionmaking process on allegedly relevant company policies or actions.

## FACTUAL AND PROCEDURAL BACKGROUND

1. This lawsuit concerns allegations involving the Meta Pixel, which is one version of an internet analytics tool used by numerous companies. Pixel-based tools are a ubiquitous technology that helps website developers across industries measure

certain actions taken by users on their websites, such as viewing pages or purchasing products, and then use that information to grow their businesses and improve online user experiences. The Meta Pixel is publicly available, and website developers can freely customize and install it to help them improve the online services they offer. Dkt. 335 ¶¶ 49-55.

Plaintiffs allege that certain healthcare providers misused the Meta Pixel—in violation of Meta's terms and policies—to send sensitive health-related information to Meta. *Id.* ¶ 8. Based on that allegation, Plaintiffs accuse Meta of obtaining this information without their consent and bring claims for breach of contract, privacy torts, and violations of California privacy statutes. *Id.* ¶¶ 368-547. Most of these claims require proof that "Meta intentionally intercepted" Plaintiffs' health-related information. *Id.* ¶¶ 417, 429, 433, 440, 447-448, 458, 484. Mr. Zuckerberg is not a defendant, and his personal state of mind is not an element of any of Plaintiffs' claims against Meta.

Nevertheless, Plaintiffs have sought to depose Mr. Zuckerberg from the start—before deposing a single other witness. Dkt. 994-4 ¶ 4. On November 15, 2024, Plaintiffs served their initial list of "witnesses they wish[ed] to depose," which "included [Mr.] Zuckerberg, but did not include Meta executives" closer to the relevant facts. *Id.* For example, Plaintiffs did not seek to depose Meta Chief Privacy and Compliance Officer for Product Michel Protti—even though he oversees a team

4

that prepares quarterly reports on "well over a thousand privacy decisions made by other Meta personnel" and, like Mr. Zuckerberg, must certify Meta's compliance with an FTC consent order related to the company's data-sharing practices. Dkt. 1006-6 ¶ 7.  Nor did Plaintiffs' initial list include Meta Vice President and Deputy Chief Privacy Officer of Policy Rob Sherman—even though he has "substantial firsthand knowledge regarding Meta's privacy decisions relevant to this litigation, including its efforts to prevent receipt of potentially sensitive data" and "proposals to change [its] behavioral advertising control from an opt-out to an opt-in." *Id.* ¶¶ 3-4.  Plaintiffs' initial list also did not include Meta Vice President of Product Management Fred Leach—even though he is personally "responsible for all of Meta's Business Tools (including the Pixel)," Dkt. 994-4 ¶ 17—or numerous other Meta personnel with relevant knowledge.[2]

In contrast to Mr. Protti, Mr. Sherman, Mr. Leach, and other Meta personnel, Mr. Zuckerberg is not involved in "the day-to-day operations" of Meta's large privacy apparatus, given his roles as CEO and chairman.  Dkt. 1006-6 ¶ 5.  Perhaps for that reason, none of Plaintiffs' "313 requests for production" or their "dozens of requests for admission and interrogatories" made "any inquiries regarding

---

[2] To name just a few, Plaintiffs did not seek testimony from Mary Ku, Andrew Bocking, Sammi Krug, Ning Li, Greg Marra, McKenzie Thomas, Meera Krishna, David Sasaki, Sam Mincer, Amee Kamdar, or Chinmay Karande.  Dkt. 994-4 ¶ 17; Dkt. 993-3 at 1; *see also* Dkt. 1070-2.

Mr. Zuckerberg's involvement" in relevant events. Dkt. 1006-4 ¶ 7. Nor did their "Rule 30(b)(6) deposition notices," which "identif[ied] 43 topics and more than 130 sub-topics" purportedly relevant to Plaintiffs' claims. Dkt. 994-4 ¶ 5.

Meta opposed Plaintiffs' request to depose Mr. Zuckerberg, relying on the "apex doctrine." Dkt. 921-2 at 4-7. Because "deposition notices directed at an official at the highest level or 'apex' of corporate management" pose "a tremendous potential for abuse," the doctrine bars depositions of such officials unless there is a compelling need for their testimony. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Deposing an apex executive is "improper" when *either* (1) "a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue" *or* (2) "the information sought in the deposition can be obtained through less intrusive discovery methods," such as "depositions of lower-level employees with more direct knowledge of the facts at issue." *Id.*

As Meta explained before the Magistrate Judge, Plaintiffs' request failed twice over. Dkt. 921-2 at 4-7. On the first prong, Mr. Zuckerberg lacked "unique firsthand, non-repetitive knowledge" of relevant facts. *Finisar*, 2015 WL 3988132, at *1. And on the second, "less intrusive discovery methods" were readily available but had not been "exhausted" without success. *Id.*

2. On April 10, 2025, the Magistrate Judge denied Meta's request for relief. Dkt. 967 at 4. The Magistrate Judge acknowledged the "potential for abuse or harassment with respect to Mr. Zuckerberg's deposition," given "the manner in which discovery has been conducted in this case." *Id.* Yet the Magistrate Judge ordered the deposition to proceed on the ground that "Mr. Zuckerberg is likely to have at least some unique first-hand knowledge of facts relevant" to Plaintiffs' claims "by virtue of his role" as "a decision maker regarding certain privacy-related matters at issue." *Id.* at 3. In particular, the Magistrate Judge observed that the FTC consent order requires that Mr. Zuckerberg "be *informed* of consequential privacy decisions" and that "he *certify* on a quarterly basis" that Meta has complied with its directives. *Id.* The Magistrate Judge also pointed to "a proposal [that] was presented to Mr. Zuckerberg in 2021 to move certain third-party data to 'a consent-only model' (i.e. opt-in rather than opt-out)." *Id.* Information about his own decisionmaking process on these and other matters, the Magistrate Judge stated, cannot be "obtained from other witnesses and/or through other less intrusive means." *Id.* at 4. So in the Magistrate Judge's view, the apex doctrine did not bar Mr. Zuckerberg's deposition, which she ordered to last a maximum of "three hours" and be "directed to facts known to him by virtue of his role pursuant to the FTC Consent Order and as a decision maker regarding privacy-related matters relevant to this case." *Id.*

Meta sought reconsideration based on "new facts" that emerged after the Magistrate Judge ruled: two "senior Meta executives"—Mr. Sherman and Mr. Leach—were "set to be deposed" and would "be able to provide more detailed testimony than Mr. Zuckerberg about relevant privacy-related issues." Dkt. 1006-3 at 4. Mr. Sherman was scheduled to testify as a fact witness, while Mr. Leach was slated to "testify as both a fact witness and as Meta's 30(b)(6) witness on topics pertaining to privacy controls and user consent," *id.* at 2, as he is personally "responsible for all of Meta's Business Tools (including the Pixel)." Dkt. 994-4 ¶ 17.

On May 15, 2025, the Magistrate Judge denied relief, while again recognizing that "Mr. Zuckerberg's deposition presents an opportunity for abuse or harassment." Dkt. 1025 at 5. The Magistrate Judge reasoned that while Mr. Sherman and Mr. Leach "may be knowledgeable about many relevant privacy-related topics," neither "purports to be the final decision maker regarding the specific matters plaintiffs identify"—i.e., the 2021 opt-in proposal. *Id.* at 3. Accordingly, the Magistrate Judge continued, "it is difficult to understand how another executive or employee could testify about how Mr. Zuckerberg arrived at the decisions attributed to him, which factors he considered, or why he decided as he did, without engaging in speculation." *Id.* at 3-4. The notion that such information "should instead be obtained from other witnesses," the Magistrate Judge concluded, "is simply not persuasive." *Id.* at 4.

3. Meta then asked the District Court for relief from the Magistrate Judge's orders. Dkt. 1035-3; *see* Fed. R. Civ. P. 72(a). Meta argued that, by relying on Mr. Zuckerberg's status as a final decisionmaker, the logic of those orders means that "chief executives always have unique, first-hand knowledge about their own thought processes, such that they must testify 'in virtually every lawsuit'" against their companies. Dkt. 1035-3 at 3 (quoting *Beeman v. Protective Life Corp.*, 2020 WL 13656058, at *5 (N.D. Ala. May 28, 2020)). That reasoning, Meta emphasized, "eviscerate[s] the apex doctrine." *Id.* (quoting *TFT-LCD.*, 2011 WL 10967617, at *2). On June 3, 2025, the District Court issued a brief order denying relief, which "agree[d] with and adopt[ed]" the Magistrate Judge's "analysis and reasoning in its entirety." Dkt. 1049 at 1.

The next day, Plaintiffs canceled Mr. Sherman's deposition. Dkt. 1070-1 ¶ 5. They made that decision in the immediate wake of receiving new documents confirming that Mr. Sherman, along with Mr. Zuckerberg and eighteen other Meta personnel, received internal recommendations and analysis on the "opt-in" proposal. *Id.* ¶¶ 3-4; *see* Dkt. 1070-2. In lieu of Mr. Sherman—or anyone else included in Meta's discussion of the "opt-in" proposal, such as Mr. Protti—Plaintiffs demanded to depose a former Director of Product Management who left Meta in 2023, did not specialize in privacy issues, and was not among the numerous Meta personnel

involved in the "opt-in" proposal on which the Magistrate Judge relied. Dkt. 1070-1 ¶ 7.

Then, on June 16, 2025, Plaintiffs took Mr. Leach's deposition. Even though Mr. Leach is responsible for the Meta Pixel and related business tools, and even though he spent roughly 30 hours preparing for the Rule 30(b)(6) deposition— including by speaking with Mr. Sherman and other Meta personnel about privacy policies, user consent, and other issues related to this case—Plaintiffs did not ask Mr. Leach a single question about the "opt-in" proposal. *Id.* ¶¶ 9-10.

Two days later, Meta asked the District Court for leave to seek reconsideration in light of these new developments. Dkt. 1070. Meta argued that, by "canceling Mr. Sherman's deposition and choosing not to ask Mr. Leach any pertinent questions about the 'opt-in' proposal," Plaintiffs "have studiously avoided learning new facts about that proposal—or anything else that might undermine their purported need for Mr. Zuckerberg's testimony." *Id.* at 2-3. Plaintiffs' tactics also effectively "admit[ted] that, all along, [Plaintiffs] were overstating their purported need for testimony from Mr. Zuckerberg." *Id.* at 4. So, as Meta argued, Plaintiffs' head-in-the-sand approach confirmed that demanding "Mr. Zuckerberg's testimony is—and always has been—a tactic to increase the burdens on Meta, not to help prove [P]laintiffs' claims on the merits." *Id.*

On June 24, 2025, the District Court issued a three-sentence order denying Meta's request, reasoning that if Plaintiffs are "'studiously avoiding' securing information critical to their case so that they can proceed with [Mr. Zuckerberg's deposition], that is a risk they will bear." Dkt. 1082 at 1. All told, Plaintiffs have deposed just one fact witness (Privacy Program Manager Jenny Lin) who held a role within Meta's Privacy group during the relevant period. Dkt. 1070-1 ¶ 9. They did not ask Ms. Lin a single question about "the Consent Order, the opt-in proposal, or Mr. Zuckerberg's potential awareness of or involvement in decision-making regarding privacy matters." Dkt. 1006-4 ¶ 5.

## REASONS FOR GRANTING THE WRIT

This case calls for mandamus relief. In determining whether to issue a writ of mandamus pursuant to the All Writs Act, *see* 28 U.S.C. § 1651, this Court looks to five general "guidelines." *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654-55 (9th Cir. 1977). Three of those guidelines focus on the merits of the challenged order—whether it "is clearly erroneous as a matter of law," constitutes "an oft repeated error, or manifests a persistent disregard of the federal rules," or "raises new and important problems, or issues of first impression." *Id.* The other two guidelines assess whether the party seeking mandamus relief "has no other adequate means" to obtain relief or will otherwise "be damaged or prejudiced in any way not correctable on appeal." *Id.* at 654.

11

Although informative, these five guidelines "are not exhaustive, and need not all be met in order to grant mandamus relief." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 535 (9th Cir. 2018) (citations and quotation marks omitted). Indeed, "rarely will a case arise where all these guidelines point in the same direction or where each guideline is even relevant or applicable." *Credit Suisse v. U.S. Dist. Ct.*, 130 F.3d 1342, 1345 (9th Cir. 1997); *accord United States v. Harper*, 729 F.2d 1216, 1222 (9th Cir. 1984). And when a case presents an "issue of first impression," mandamus may issue when the challenged order evinces merely "ordinary (as opposed to clear) error." *Barnes*, 889 F.3d at 537.

Here, these considerations cut sharply in favor of mandamus. District courts in this Circuit are deeply divided on whether a high-level executive's status as a final decisionmaker overcomes the apex doctrine's protections, and there is no practical way for this Court to resolve the split absent mandamus relief. The rule adopted by the District Court here is also plainly incorrect. Because apex executives are, by definition, final decisionmakers, justifying their depositions based on their decisionmaking power would destroy the apex doctrine's vital protections. Unless this Court intervenes, Mr. Zuckerberg's unwarranted deposition will proceed and the irremediable damage will be done.

## I.   THIS COURT SHOULD GRANT MANDAMUS TO RESOLVE AN ENTRENCHED SPLIT IN THE LOWER COURTS

Whether an apex deposition may be justified based on a high-level executive's status as a final decisionmaker has created "substantial uncertainty and confusion in the district courts" that calls for this Court's intervention on mandamus. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1157 (9th Cir. 2010).  The issue is a "'particularly important question[] of first impression' regarding discovery" that will otherwise "elude appellate review."  *In re Kirkland,* 75 F.4th 1030, 1041 (9th Cir. 2023) (quoting *Perry*, 591 F.3d at 1157).

### A.   District Courts Are Deeply Divided On How To Apply The Apex Doctrine

District courts in this Circuit are deeply divided as to whether a high-level executive's status as a final decisionmaker on relevant company policies or actions itself justifies an apex deposition.  The District Court's decision in this case deepens this entrenched split.

1. On one side of the split, several courts—including the District Court here—have ordered apex depositions on the theory that "only" final decisionmakers themselves "can testify about what [they were] thinking, knew or understood" when making relevant decisions.  *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048987, at *3 (C.D. Cal. Nov. 23, 2020).  According to these courts, that satisfies both prongs of the apex doctrine.  For the first prong, the argument goes, a final

decisionmaker necessarily "possesses unique, first-hand, non-repetitive knowledge" because he "alone knows what he personally focuse[d] on" while making a decision, "the weight he g[ave] to particular kinds of information," and "how he use[d] … reports" provided by other company personnel. *LA Terminals, Inc. v. United Nat'l Ins.*, 2022 WL 1637206, at *6 (C.D. Cal. Jan. 28, 2022). For the second prong, these courts hold that "less intrusive means" of discovery are unavailable because supposedly no one else can "testify about how [an apex executive] arrived at the decisions attributed to him, which factors he considered, or why he decided as he did, without engaging in speculation." Dkt. 1025 at 3-4; *see* Dkt. 1049 at 1 (adopting Magistrate Judge's "analysis and reasoning in its entirety").

On the other side of the split, many district courts have reached the opposite conclusion. Those courts hold that merely asserting that a final decisionmaker is "the *only* person who can testify about why" they made a certain decision is insufficient to justify an apex deposition. *Doble v. Mega Life & Health Ins.*, 2010 WL 1998904, at *3 (N.D. Cal. May 18, 2010). After all, "the same could be said for any 'apex' deponent." *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018 U.S. Dist. LEXIS 17786, at *4-5 (N.D. Cal. Feb. 1, 2018). Courts in this camp also reject the notion that other witnesses cannot "testify about the official decisions" made by the "final decision maker" at a company, including as to the apex executive's personal "state of mind." *River City Testing v. Cohen*, 2021 WL 4805443, at *3

14

(C.D. Cal. July 8, 2021); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017).

2. This split of authority has come to the fore in cases involving efforts to depose Mr. Zuckerberg himself. In this case, the District Court deemed the apex doctrine overcome "by virtue of [Mr. Zuckerberg's] role" as "a decision maker regarding certain privacy-related matters at issue." Dkt. 967 at 3; *see supra* at 7-8. Two other district courts—including one in this Circuit—have reached the same conclusion for similar reasons. *See Kadrey v. Meta Platforms, Inc.*, 2024 WL 4293910, at *1 (N.D. Cal. Sept. 24, 2024) (holding that Mr. Zuckerberg's status as "the principal decision maker concerning Meta's decision to open source the language model" was enough to "justif[y] an apex deposition"); *ZeniMax Media, Inc. v. Oculus VR, LLC*, 2015 WL 13949662, at *1 (N.D. Tex. Dec. 7, 2015) (holding that "no one else" but Mr. Zuckerberg "is in a better position to testify about [his] personal decision-making" about a business acquisition).

By contrast, other district courts have rejected deposition demands premised on an asserted need for "investigation of Mr. Zuckerberg's state of mind" regarding "his decision[s]," describing those demands as "speculative," "unsubstantiated," and "unpersuasive." *Metabyte, Inc. v. Meta Platforms, Inc.*, 2025 WL 799040, at *1 (N.D. Cal. Mar. 13, 2025); *see also* Order on Discovery Dispute Regarding Deposition, *Total Recall Techs. v. Lucky*, No. 15-cv-02281 (N.D. Cal. Sept. 22,

2020), Dkt. 292 (rejecting attempt to depose Mr. Zuckerberg).  In fact, another district court summarily rejected an attempt to depose Mr. Zuckerberg in a case involving allegations about the Meta Pixel that are materially similar to those in this case.  *See* Order, *Frasco v. Flo Health Inc.*, No. 21-cv-00757 (N.D. Cal. Feb. 8, 2023), Dkt. 269.  The split on this critically important issue could not be clearer.[3]

## B.    Mandamus Is Needed To Resolve The Split

Given the entrenched split in the district courts, this Court's guidance on how to apply the apex doctrine is urgently needed.  Absent mandamus, this "novel and important question" will "repeatedly evade review because of the collateral nature" of "discovery ruling[s]."  *Perry*, 591 F.3d at 1159.

Parties hoping to challenge adverse decisions applying the apex doctrine lack the ordinary avenues for appellate review.  "They may not directly appeal" because such "discovery orders are not final, appealable orders under 28 U.S.C. § 1291." *SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 913 (9th Cir. 1999).  Interlocutory appeals under 28 U.S.C. § 1292(b) are also off the table, as discovery orders like these do not decide "controlling" merits issues and review of such orders do not "materially advance the ultimate termination of the litigation."  *ICTSI Oregon,*

---

[3]  District courts are divided even on the threshold question of which party bears the burden of proving (or disproving) the need for an apex deposition. *See Anderson v. Cnty. of Contra Costa*, 2017 WL 930315, at *3 (N.D. Cal. Mar. 9, 2017) (collecting cases); Dkt. 967 at 1 (improperly putting the burden on Meta).  This additional confusion further confirms the need for this Court's intervention.

*Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). "Neither does Federal Rule of Procedure 54(b) apply," since it "applies [only] to situations in which final judgment is entered as to some but not all claims or parties." *SG Cowen*, 189 F.3d at 913. And an appeal is similarly "not allowed under 28 U.S.C. § 1292(a)(1)" because discovery orders "do[] not grant or deny an injunction." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984).

For these reasons, this Court routinely issues mandamus relief on discovery matters, particularly when—as here—the matter presents "a novel issue" that "has divided district courts" and "is likely to have significant continued relevance." *In re Kirkland*, 75 F.4th at 1036; *accord Perry*, 591 F.3d at 1156-57 (citing 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3935.3 (2d ed. 2009)). For example, this Court has relied on mandamus to rein in "the scope of [a bankruptcy] court's subpoena power," *Kirkland*, 75 F.4th at 1036, enforce rules "govern[ing] the taking of depositions in criminal cases," *United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006), and "define the scope" of "important privilege[s]," such as "the attorney-client privilege" and "the First Amendment privilege against compelled disclosure of internal campaign communications," *Perry*, 591 F.3d at 1157.

Of particular relevance here, this Court has issued mandamus relief to address directly analogous restrictions on deposing high-level *government* officials, given the significant dangers of "distracting cabinet secretaries from their essential duties

17

with an inundation of compulsory, unnecessary depositions." *U.S. Dep't of Educ.*, 25 F.4th at 703. This Court should exercise its mandamus authority to provide much-needed guidance on the apex doctrine's related protections for high-level business executives. The disarray in the lower courts is unsustainable, and clarity on this important subject is needed.

## II. THE DECISION BELOW IS CLEARLY ERRONEOUS AS A MATTER OF LAW AND SHOULD BE CORRECTED

Because proper application of the apex doctrine "raises an important issue of first impression" in this Court and "has divided district courts in this circuit," Meta "need show only ordinary (as opposed to clear) error" to obtain mandamus relief. *Barnes*, 889 F.3d at 537 (quoting *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999)). But "the difference between clear error and ordinary error" ultimately does not matter here, as "mandamus relief is warranted under either standard." *Kirkland*, 75 F.4th at 1042. The District Court's order compelling Mr. Zuckerberg's deposition based on his status as a final decisionmaker is manifestly incorrect, as are the many decisions relying on the same flawed reasoning. This Court should intervene in this case to restore the apex doctrine's vital protections across this Circuit.

### A. Possessing Final Decisionmaking Authority Cannot Itself Overcome The Apex Doctrine

That a high-level business executive possesses final decisionmaking authority on relevant company policies or actions cannot itself justify an apex deposition. By definition, "*any* 'apex' deponent" qualifies as a final decisionmaker. *Newmark Realty*, 2018 U.S. Dist. LEXIS 17786, at \*4-5 (emphasis added); *see also Celerity*, 2007 WL 205067, at \*3 (equating apex executive with "high-level decision maker"). Permitting the deposition of an apex executive simply "because of his position" as an apex executive "would eviscerate the apex doctrine." *TFT-LCD*, 2011 WL 10967617, at \*2. It makes no sense for the very status that triggers the apex doctrine in the first place to overcome the doctrine's crucial safeguards against abuse and harassment. This Court should reject such tautological reasoning.

It is also trivially easy to allege that an apex executive had the final say on a company policy or action relevant to a lawsuit against the company. All a plaintiff must do is point to something that arguably bears on their claims and assert that it crossed the executive's desk. This "kind of 'the-buck-stops-here' argument goes too far," as it would make apex executives "fair game to be deposed in virtually every lawsuit" against their companies. *Beeman*, 2020 WL 13656058, at \*5.

Such reasoning is particularly misguided considering that many lawsuits against large companies do not require proof of an apex executive's personal state of mind. Rather, they generally turn on "corporate knowledge," about which

19

plaintiffs can readily "obtain discovery … without deposing" the CEO. *Drake v. Steak N Shake Ops., Inc.*, 2018 WL 3625769, at *3 (E.D. Mo. July 30, 2018). Such evidence might include a combination of documentary evidence, such as emails, memoranda, and other internal company documents; public statements by corporate representatives; testimony from other personnel; and of course the relevant company decision itself. Indeed, "circumstantial evidence" is a "principal … means of proving" corporate intent. *LocusPoint Networks, LLC v. D.T.V. LLC*, 2015 WL 5043261, at *16 (N.D. Cal. Aug. 26, 2015).

At any given time, large enterprises must defend themselves against scores of lawsuits across the country and even overseas, many of which are meritless. CEOs and other high-level executives have demanding and time-consuming duties, even before factoring in the burdens of litigation. They also cannot be in multiple places at once. These realities create the "tremendous potential for abuse" against which the apex doctrine is designed to guard. *Celerity*, 2007 WL 205067, at *3. Rigorous standards governing depositions of apex executives are thus crucial to ensuring that litigation burdens are commensurate with a case's actual needs, rather than exploited to gain perceived leverage.

The apex doctrine cannot be satisfied by incanting magic words like "final decisionmaker." Yet multiple district courts have defanged the apex doctrine by

doing exactly that. *See supra* at 13-15. This "oft-repeated error" cries out for correction from this Court. *Bauman*, 557 F.2d at 655.

**B. This Case Exemplifies The Flawed, Tautological Reasoning That Has Taken Hold In Some District Courts**

This case is a textbook example of the tautological reasoning adopted by multiple district courts that improperly waters down the apex doctrine's stringent standards. By adopting the Magistrate Judge's "analysis and reasoning in its entirety," the District Court deemed the apex doctrine satisfied based on the mere fact that Mr. Zuckerberg, as Meta's CEO and chairman, is the final decisionmaker on privacy matters. Dkt. 1049 at 1. That circular analysis cannot stand. The evidence in this case demonstrates that neither prong of the apex doctrine is satisfied. This Court should end Plaintiffs' abusive campaign to depose Mr. Zuckerberg.

1. On the first prong, the District Court concluded that "Mr. Zuckerberg is likely to have" both "unique" and "first-hand" knowledge of relevant facts "by virtue of his role" as "a decision maker regarding certain privacy-related matters at issue." Dkt. 967 at 3. That is inaccurate. The record shows that any relevant knowledge Mr. Zuckerberg possesses is "coextensive" with information known to others. *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067, at *3 (D. Colo. June 27, 2011).

For example, the Magistrate Judge relied on the FTC consent order requiring that Mr. Zuckerberg "be *informed* of consequential privacy decisions" and that "he

*certify* on a quarterly basis" that Meta has complied with its directives. Dkt. 967 at 3. But merely being informed of privacy-related decisions made by other people necessarily means that Mr. Zuckerberg's information is neither unique nor first-hand. And Mr. Protti must *also* certify Meta's compliance with the FTC consent order, yet Plaintiffs never sought to depose him. Dkt. 1006-6 ¶ 7.

In addition, the Magistrate Judge cited testimony about a proposal "presented to Mr. Zuckerberg in 2021 to move certain third-party data to 'a consent-only model' (i.e. opt-in rather than opt-out)." Dkt. 967 at 3. But the same testimony emphasized that decisions on such proposals were driven by "consensus" among Meta executives—not made solely by Mr. Zuckerberg. Dkt. 999-3 at 219:20-220:4, 221:24-222:7. And Mr. Zuckerberg relies on internal company reports, including for privacy-related matters, Dkt. 1006-6 ¶ 6, which are necessarily "second-hand information provided by other individuals," *River City*, 2021 WL 4805443, at *3. For the opt-in proposal in particular, Mr. Protti, Mr. Sherman, and at least seventeen other Meta personnel (aside from Mr. Zuckerberg) received the relevant internal analysis and recommendations. Dkts. 1070-1, 1070-2.

Given these facts, the Magistrate Judge acknowledged that other Meta personnel "may be knowledgeable" about the "privacy-related topics" in dispute. Dkt. 1025 at 3. The Magistrate Judge's sole basis for nonetheless deeming the first

22

prong met was that none of those personnel "purports to be the final decision maker." *Id.* That ipse dixit is not enough. This Court should not accept it.

2. The story is much the same for the second prong. The Magistrate Judge saw no less intrusive means of discovery because, in her view, information about "how Mr. Zuckerberg arrived at the decisions attributed to him"—i.e., the 2021 opt-in proposal—could not "be obtained from other witnesses." *Id.* at 3-4. But, again, numerous other Meta executives were involved in the proposal. And the Magistrate Judge incorrectly held that other employees are incapable of testifying to an apex executive's decisionmaking process, as evidenced by the internal recommendations he received, the views he expressed, and so on. Regardless, none of Plaintiffs' claims requires proof of Mr. Zuckerberg's state of mind—only Meta's corporate intent is at issue. Dkt. 335 ¶ 417 (alleging "Meta intentionally intercepted" certain data).

The reality is that Plaintiffs have not seriously tried to gather evidence from other sources about Mr. Zuckerberg's conduct or intent. They have not even "take[n] half-hearted depositions of lower-level employees" to try to "set up an opportunity to depose [him]." *Celerity*, 2007 WL 205067, at *5; *see supra* at 4-6 & n.2. On the contrary, the day after obtaining the District Court's June 3, 2025 order compelling Mr. Zuckerberg's deposition, Plaintiffs *canceled* Mr. Sherman's deposition, despite his extensive knowledge about Meta's privacy practices and involvement in the

opt-in proposal. And then, on June 16, Plaintiffs took Mr. Leach's Rule 30(b)(6) deposition without asking a *single* question about the opt-in proposal, much less the decision-making process behind it. Moreover, none of Plaintiffs' requests for production, requests for admission, or interrogatories made "any inquiries regarding [Mr. Zuckerberg's] involvement" in relevant events. Dkt. 1006-4 ¶ 7.

These head-in-the-sand tactics demonstrate that Plaintiffs are intentionally evading any means of obtaining the testimony they purportedly need that would be less intrusive than deposing Mr. Zuckerberg. That gives Plaintiffs' game away: Their effort to depose Mr. Zuckerberg is a ploy to increase the burdens of this litigation and obtain perceived leverage, not a necessary measure for proving their claims. Even the Magistrate Judge acknowledged the "potential for abuse or harassment with respect to Mr. Zuckerberg's deposition," given "the manner in which discovery has been conducted in this case." Dkt. 967 at 4. That should have been dispositive. Contrary to the District Court's submission, the apex doctrine prohibits Plaintiffs from choosing to take the "risk" of "'studiously avoiding' securing information" they have misleadingly represented is "critical to their case," just so "they can proceed with the deposition" of Mr. Zuckerberg. Dkt. 1082 at 1.

## III. THERE ARE NO OTHER ADEQUATE MEANS OF RELIEF

Finally, mandamus is appropriate because Meta has "no other adequate means for relief" from "the district court's discovery order." *In re Williams-Sonoma, Inc.*,

947 F.3d 535, 540 (9th Cir. 2020). And the harm threatened here—Mr. Zuckerberg being compelled to undergo an unwarranted deposition—"is not correctable" after the fact. *U.S. Dep't of Educ.*, 25 F.4th at 705.

As explained, the ordinary avenues for appellate review are unavailable for interlocutory discovery orders. *See supra* at 16-18. Nor is waiting to seek relief until after final judgment a feasible option. "[B]efore a direct appeal could be taken and heard" following a resolution on the merits, Mr. Zuckerberg would have to sit for his court-ordered deposition. *Williams-Sonoma*, 947 F.3d at 540. The "damage" to Mr. Zuckerberg's and Meta's interests "would be complete," and Meta's challenge to the District Court's decision on the apex doctrine "would be mooted." *Id.*; *accord SG Cowen*, 189 F.3d at 914. The harm Meta seeks to avoid, after all, "is the intrusion of the deposition itself." *U.S. Dep't of Educ.*, 25 F.4th at 705. Unless this Court intervenes now, that harm will occur and cannot be redressed.

Nor is it realistic or fair to require that Mr. Zuckerberg "refuse to comply with the district court's discovery order and appeal the resulting sanction." *Fei Ye*, 436 F.3d at 1122. This Court has "explicitly rejected" that line of argument "where 'discovery is directed at third-parties who could not be expected' to incur a contempt citation." *Id.*; *accord SG Cowen*, 189 F.3d at 913. Mr. Zuckerberg is not a party to this case, and he cannot be expected to incur a contempt citation just to obtain appellate review of the District Court's erroneous orders.

The whole point of the apex doctrine is to *avoid* unwarranted burdens on high-level executives. Demanding that such executives expose themselves to contempt sanctions any time they face an unwarranted deposition violates the doctrine's core purpose and makes no sense. It would exponentially increase the risks of distraction, while inviting widespread abuse and harassment. Mandamus is appropriate and should issue forthwith.

## CONCLUSION

This Court should issue a writ of mandamus directing the District Court to vacate its orders compelling Mr. Zuckerberg's deposition in this case.

Dated:  July 7, 2025                            Respectfully submitted,


                                               */s/ Gary Feinerman*

Andrew B. Clubok                               Gary Feinerman
Nicolas Luongo                                 LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                           330 N. Wabash Avenue, Suite 2800
1270 Avenue of the Americas                    Chicago, IL 60611
New York, NY 10020                             (312) 876-7700
                                               gary.feinerman@lw.com
Melanie M. Blunschi
Nicholas Rosellini                             Lauren R. Goldman
LATHAM & WATKINS LLP                           Darcy C. Harris
505 Montgomery Street, Suite 2000              GIBSON, DUNN & CRUTCHER LLP
San Francisco, CA 94111                        200 Park Avenue
                                               New York, NY 10166

                                               Elizabeth K. McCloskey
                                               Abigail A. Barrera
                                               GIBSON, DUNN & CRUTCHER LLP
                                               One Embarcadero Center, Suite 2600
                                               San Francisco, CA 94111


           *Counsel for Petitioner Meta Platforms, Inc.*

27

## STATEMENT OF RELATED CASES

Petitioner is unaware of any cases pending in this Court that are related to this proceeding, as defined and required by Circuit Rules 21-3 and 28-2.6.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

See Attachment A

**Description of Document(s)** *(required for all documents)*:

See Attachment A

**Signature** s/Gary S. Feinerman    **Date** 7/7/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 15      *Rev. 12/01/2018*

Attachment A

Service List

| Jason "Jay" Barnes<br>Email: jaybarnes@simmonsfirm.com<br>Eric S. Johnson<br>Email: ejohnson@simmonsfirm.com<br>An V. Truong<br>Email: atruong@simmonsfirm.com<br>Jennifer Paulson<br>Email:jpaulson@simmonsfirm.com<br>SIMMONS HANLY CONROY LLC<br>112 Madison Avenue, 7th Floor<br>New York, New York 10016<br>Telephone: (212) 784-6400 | Geoffrey Graber<br>Email: ggraber@cohenmilstein.com<br>Eric Kafka<br>Email: ekafka@cohenmilstein.com<br>Claire Torchiana<br>Email: ctorchiana@cohenmilstein.com<br>COHEN MILSTEIN SELLERS &<br>TOLL PLLC<br>1100 New York Avenue NW, Fifth<br>Floor<br>Washington, DC 20005<br>Telephone: (202) 408-4600 |
|---|---|
| Paul R. Kiesel<br>Email: kiesel@kiesel.law<br>Jeffrey A. Koncius<br>Email: koncius@kiesel.law<br>Nicole Ramirez, CSB #279017<br>Email: ramirez@kiesel.law<br>KIESEL LAW LLP<br>8648 Wilshire Boulevard<br>Beverly Hills, California 90211-2910<br>Telephone: (310) 854-4444 | Beth E. Terrell<br>Email: bterrell@terrellmarshall.com<br>Amanda M. Steiner<br>Email: asteiner@terrellmarshall.com<br>Benjamin M. Drachler<br>Email: bdrachler@terrellmarshall.com<br>TERRELL MARSHALL LAW<br>GROUP PLLC<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103<br>Telephone: (206) 816-6603 |
| Andre M. Mura, CSB #298541<br>Email: amm@classlawgroup.com<br>Hanne Jensen, CSB #336045<br>Email: hj@classlawgroup.com<br>GIBBS LAW GROUP LLP<br>1111 Broadway, Suite 2100<br>Oakland, CA 94607<br>Telephone: (510) 350-9700 | Honorable William H. Orrick<br>United States District Court for the<br>Northern District of California<br>Courtroom 2<br>450 Golden Gate Ave<br>San Francisco, CA 94102 |

Description of Documents to be Served

1. Petition for a Writ of Mandamus to the United States District Court for the Northern District of California;

2. Addendum to Petition for a Writ of Mandamus Vol. 1 of 2;

3. Addendum to Petition for a Write of Mandamus Vol. 2 of 2 (Filed Under Seal); and

4. Unopposed Motion to File Portions of Addendum to Petition for a Writ of Mandamus Under Seal.