## No. 25-4172

### In the United States Court of Appeals for the Ninth Circuit

---

*IN RE META PLATFORMS, INC.*

---

META PLATFORMS, INC.,
*Petitioner-Defendant,*

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
SAN FRANCISCO,
*Respondent,*

JANE DOE I, JOHN DOE II, JOHN DOE III, JANE DOE IV, JANE DOE V, JANE DOE IX, AND JANE DOE X, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, ET AL.,
*REAL PARTIES IN INTEREST-PLAINTIFFS.*

---

### ANSWER OF REAL PARTIES IN INTEREST-PLAINTIFFS TO PETITION FOR WRIT OF MANDAMUS

---

JASON 'JAY' BARNES
**SIMMONS HANLY CONROY LLP**
112 Madison Ave., 7th Floor
New York, NY 10016

GEOFFREY A. GRABER
CLAIRE TORCHIANA
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005

August 5, 2025

ANDRE M. MURA
HANNE JENSEN
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
*amm@classlawgroup.com*
Telephone: (510) 350-9700

*Counsel for Real Parties in Interest-Plaintiffs (additional counsel on signature page)*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ISSUE PRESENTED ............................................................................2

BACKGROUND ...................................................................................2

LEGAL STANDARD ............................................................................9

ARGUMENT .....................................................................................10

    I.   Meta is not entitled to mandamus relief. ............................................10

      A.  Meta cannot establish clear and indisputable error..................10

         1.   Meta was required to show good cause for a
             protective order barring Mr. Zuckerberg's deposition. ....12

         2.   Meta's criticisms of the district court's application of
             the apex doctrine could never amount to clear error
             and are otherwise unavailing. ...............................................20

      B.  Meta cannot establish any other reason to grant the
         petition. ...........................................................................................25

CONCLUSION ..................................................................................27

CERTIFICATE OF COMPLIANCE ...................................................29

CERTIFICATE OF SERVICE ...........................................................30

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                          Page(s)

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................... 18, 19

*Andrich v. Glynn*,
   No. 24-3078, 2025 WL 1625536 (9th Cir. June 9, 2025)..................................18

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   282 F.R.D. 259 (N.D. Cal. 2012) ..........................................................7

*Bauman v. U.S. Dist. Ct.*,
   557 F.2d 650 (9th Cir. 1977)......................................................... 10, 26

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992).............................................................14

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975)........................................... 11, 16, 19, 23

*Branzburg v. Hayes*,
   408 U.S. 665 (1972) ...................................................................19

*Brown v. Comm'r of Internal Revenue*,
   116 F.4th 861 (9th Cir. 2024) ........................................................18

*Calderon v. U.S. Dist. Ct. for N. Dist. of Cal.*,
   134 F.3d 981 (9th Cir. 1998).............................................................12

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia*,
   542 U.S. 367 (2004) ..................................................................9, 10

*Cordero v. Stemilt AG Servs., LLC*,
   142 F.4th 1201 (9th Cir. 2025) ........................................................14

*DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
   219 F.3d 930 (9th Cir. 2000)....................................................... 25, 26

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003)..................................................................13

*Frasco v. Flo Health, Inc.*,
    No. 3:21-cv-00757-JD (N.D. Cal.) ......................................................21

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ..................................................................................13

*In re Anonymous Online Speakers*,
    661 F.3d 1168 (9th Cir. 2011)................................................ 11, 24, 25

*In Re County of Orange*,
    784 F.3d 520 (9th Cir. 2015)..................................................................10

*In re Kirkland*,
    75 F.4th 1030 (9th Cir. 2023) ...............................................................10

*In re Swift Transp. Co. Inc.*,
    830 F.3d 913 (9th Cir. 2016)..................................................................11

*In re U.S. Dep't of Educ.*,
    25 F.4th 692 (9th Cir. 2022) .................................................................17

*In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011)..................................................................12

*Medhekar v. U.S. Dist. Ct.*,
    99 F.3d 325 (9th Cir. 1996)....................................................................12

*Pizzuto v. Tewalt*,
    136 F.4th 855 (9th Cir. 2025) ...............................................................22

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ..................................................................................15

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012).......................................... 11, 15, 19, 20

*Stratford v. Umpqua Bank*,
    534 P.3d 1195 (Wash. 2023)............................................... 15, 17, 18

*United States v. Morgan*,
   313 U.S. 409 (1941) ...........................................................................17

## Rules

Fed. R. Civ. P. 26............................................................................. *passim*

## Other Authorities

4 J. Moore, Federal Practice ¶ 26.69 at pp. 26-494 — 26-495 (2d ed. 1974) .....16

8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961) ...............................19

F. Scott Fitzgerald, The Rich Boy, in The Short Stories of F. Scott
   Fitzgerald: A New Collection 317 (Matthew J. Bruccoli ed., Scribner
   1989) (1926) ...........................................................................................1

Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2036 (3d ed.) ............. 12, 13, 14

## INTRODUCTION

Corporate executives "are different from you and me"[1]—but not in their obligation to comply with the Federal Rules of Civil Procedure. Corporate executives—like all other private litigants—must show good cause under Rule 26(c)(1) to justify restricting discovery.

Meta did not even attempt to show good cause when it sought a protective order to shield its chief executive officer, Mark Zuckerberg, from a deposition in this consumer privacy class action. The company instead invoked the "apex doctrine"—a rule that shifts the burden to the party seeking to take the deposition of a high-level corporate executive on the assumption that such depositions are always improper absent a heightened showing of need.

But the only federal appellate court to consider the apex doctrine by name found it incompatible with Rule 26(c)(1) and thus rejected it. Longstanding Ninth Circuit precedent similarly holds that high-level corporate executives must show good cause to justify a protective order.

---

[1] *See* F. Scott Fitzgerald, *The Rich Boy*, in The Short Stories of F. Scott Fitzgerald: A New Collection 317 (Matthew J. Bruccoli ed., Scribner 1989) (1926) (describing the "very rich").

Even so, Meta refused to carry its burden under Rule 26(c)(1), and instead relied on the apex doctrine's presumption of burden.

A writ of mandamus is not available to relieve Meta of the consequences of that decision. Mandamus—unlike the apex doctrine—is not a golden parachute for corporate officials. It requires (among other things) clear and indisputable error. But Meta has not shown any error, let alone clear error, in the denial of a protective order unsupported by Rule 26(c)(1).

Because Meta's arguments do not come close to carrying the heavy burden that Meta bears in seeking such extraordinary relief, its petition should be denied.

## ISSUE PRESENTED

Is it clear and indisputable that Meta is entitled to a writ of mandamus—an extraordinary remedy—directing the district court to vacate its orders allowing a limited deposition of Meta's chief executive officer, Mark Zuckerberg, when the company did not show a particularized harm enumerated in Rule 26(c)(1), as the federal rules require?

## BACKGROUND

*Meta's Pixel.* Meta makes its billions through advertising, and the lifeblood of its ads are data from Facebook users. But Meta doesn't just

surveil Facebook users when they use Facebook. The company uses "Business Tools" like the Pixel—a sophisticated piece of computer code—to follow Facebook users and their communications wherever they go on the web. You might think that websites that provide healthcare—like patient portals on hospital websites—are off-limits. But you would be wrong. Health advertising is big business. So Meta, moving fast and breaking things, worked to get the Pixel installed on thousands of healthcare provider websites and apps.

With the spigot of private health data turned on, Meta promised those on Facebook that it "require[s]" each of its advertising partners "to have the lawful rights" or the "right . . . to collect, use, and share your data before providing any data to us." Compl. at ¶ 171; *see also id*. at ¶ 181 (noting Meta's terms promise it uses "advanced technical systems to detect potential misuse of our Products"). But Meta does not actually "require" that any its partners have "the right" to do anything—it just has its advertising partners agree to its commercial terms. *Id*. at ¶ 174. When news of Meta's surveillance broke, some hospitals cried foul—and notified their patients that pixel trackers may have acquired their sensitive health information. Others stayed mum.

3

*This Case.* Seven Facebook users filed a class action lawsuit against Meta, accusing it of violating federal and state privacy and consumer-protection laws and breaching its terms of service. Meta, they claimed, had obtained sensitive private health information from millions of Facebook users without their knowledge or consent. They sought monetary damages, statutory penalties, and injunctive relief for all affected Facebook users.

From the start, this lawsuit has implicated Mark Zuckerberg, Meta's chief executive officer: *He* had personal knowledge of Meta's intent to receive this information, and *he* knew about and played a key role in Meta's collection of sensitive health data. The lawsuit even alleged that although Mr. Zuckerberg had been personally advised by others in the company that Meta should stop tracking health information, he overruled their recommendations to limit this data harvesting. All the while, Mr. Zuckerberg was certifying under oath that Meta was complying with wide-ranging privacy obligations that the company had agreed to abide by as part of a consent decree with the Federal Trade Commission. Compl. at ¶¶ 291, 294, 341.

When it came time for Meta to identify who at the company had personal knowledge about these allegations, it did not identify Mr.

4

Zuckerberg—or any other senior executives, or even any employee who worked on privacy at the company. So Plaintiffs fought to obtain Mr. Zuckerberg's documents—and won. The district court agreed that Mr. Zuckerberg needed to turn over certain documents based on the strength of the plaintiffs' showing that he was a "true decisionmaker" on issues at the heart of this lawsuit, including on issues of privacy and the company's "intent, knowledge, or willfulness." ECF No. 293 at 2; ECF No. 315 at 3-5. This wasn't a hard sell given his involvement in decisions relevant to the claims at issue, and especially because "Meta identifie[d] no significant burden" on Mr. Zuckerberg. ECF No. 315 at 4.

But when it came time to depose Mr. Zuckerberg, Meta balked. It demanded court intervention, arguing that under the "apex doctrine," Mr. Zuckerberg was presumptively shielded from a deposition because of his status as a corporate executive. Plaintiffs, Meta insisted, could not depose Mr. Zuckerberg because they could not show that he had "unique, relevant knowledge" or that they had "exhausted less-intrusive discovery methods." ECF No. 909 at 4-7.

Apart from characterizing Plaintiffs' request as demonstrating the "tremendous *potential* for abuse and harassment" because Mr. Zuckerberg is

5

the chief executive officer of the most popular social media company in the world, the company made no specific showing of burden, abuse, or harassment under Rule 26(c)(1). ECF No. 909 at 4 (emphasis added). In fact, it made no showing at all: Mr. Zuckerberg did not submit a declaration describing how he would be burdened by sitting for a deposition or that he lacked relevant knowledge. Meta never even denied that Mr. Zuckerberg had relevant, personal knowledge that relates to elements of Plaintiffs' claims or Meta's defenses—it only argued that lower-ranking individuals might also have relevant information (without even naming anyone it had in mind). *Id.* at 5-6.

*The District Court's Orders*. Magistrate Judge DeMarchi, who oversees discovery in this case, construed Meta's argument as a request for a protective order under Rule 26(c)(1). ECF No. 967 at 1. The district court ultimately allowed the deposition to proceed, but with conditions.

The court got there by applying a version of the apex doctrine that some courts in the Northern District of California apply. That version of the apex doctrine bars the deposition of high-ranking corporate officers like Mr. Zuckerberg unless the plaintiffs demonstrate that a high-ranking corporate executive is likely to have "unique" relevant information and that they have

6

exhausted less intrusive means to obtain the discovery from the witness. ECF No. 967 at 2 (citing *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)).[2] The district court carefully considered the factual record and found that Plaintiffs *had* shown Mr. Zuckerberg possessed unique, first-hand knowledge of relevant facts, and that Plaintiffs had exhausted less intrusive methods for those topics. *See id.* Even so, the district court also considered that there is "tremendous *potential* for abuse or harassment" for witnesses who sit at the apex of a company, so Mr. Zuckerberg's deposition would be limited to three hours and restricted to "facts known by him by virtue of his role pursuant to the FTC Consent Order and as a decision maker regarding privacy-related matters relevant to this case." *Id.* at 4 (emphasis added).

Despite these protections, Meta asked the district court to reconsider its ruling and bar Mr. Zuckerberg's deposition in its entirety. ECF No. 1025.

---

[2] Meta suggests (at 16 n.3) the district court "improperly" put the burden on the company to show why Mr. Zuckerberg should not have to sit for a deposition. Not so. The court put the burden on Plaintiffs to meet the apex doctrine. *See* ECF No. 967 at 3-4. Meta's argument is otherwise revealing. It underscores that Meta refused to carry its burden under Rule 26(c)(1), and instead improperly relied on the apex doctrine's presumption of burden.

But the second verse was the same as the first: Meta submitted no declaration from Mr. Zuckerberg, either addressing the extent of his personal knowledge or substantiating any burden he would suffer from being deposed. Instead, Meta submitted declarations suggesting that other individuals—who were not custodians and were not disclosed until spring of 2025, when fact discovery was closing, after the plaintiffs had taken almost all of the depositions allotted under the rules—had similar information and should be deposed first. The district court was not persuaded that this obviated the need for Mr. Zuckerberg's deposition and found no reason to alter its prior order. *Id.* at 4-5. It expressly noted that "Mr. Zuckerberg has not submitted a declaration denying that he has [unique or first-hand relevant] knowledge," and that Meta had previously resisted attempts to seek information about Mr. Zuckerberg's decision-making from other witnesses. *Id*. Further, Meta had not articulated what less intrusive means Plaintiffs could use to obtain information unique to Mr. Zuckerberg's knowledge. *Id*. Seeking to reassure Meta, the district court noted that the prior order had already accounted for the mere potential that Mr. Zuckerberg would be burdened by the deposition by limiting his deposition in duration and scope. *Id*. at 5. For these reasons, the district court, exercising

8

its considerable discretion over discovery, declined to bar Mr. Zuckerberg's deposition in its entirety. *Id.*

Meta asked District Judge Orrick to overrule the order, but to no avail, because he found that "Judge DeMarchi carefully and thoughtfully weighed the competing interests of Meta and Mr. Zuckerberg against the showing made by plaintiffs of the need for the deposition." ECF No. 1049. Undeterred, Meta sought reconsideration of Judge Orrick's denial of relief, but that too was swiftly denied (ECF No. 1082) in a brief opinion that Meta complains (at 9) could have been longer.

Meta then filed a petition for a writ of mandamus in this Court. It has since notified the district court that Mr. Zuckerberg's deposition may proceed this month in Palo Alto if this Court denies its mandamus petition by August 21. ECF No. 1120.

## LEGAL STANDARD

Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (citation omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of" mandamus. *Id.* (internal quotation marks and

citations omitted). A party seeking mandamus "carries the high burden of establishing that" its "right to issuance of the writ is clear and indisputable," *In Re County of Orange*, 784 F.3d 520, 526 (9th Cir. 2015), and it has "no other adequate means to attain the relief." *Cheney*, 542 U.S. at 381; *see Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (outlining five non-exhaustive factors for mandamus relief). But even if a party makes that demanding showing, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381.

## ARGUMENT

### I.     Meta is not entitled to mandamus relief.

#### A.     Meta cannot establish clear and indisputable error.

Meta cannot show that the district court erred, let alone committed "clear and indisputable" error. *Cheney*, 542 U.S. at 381 (quotation marks omitted). That failure dooms Meta's petition: The "absence of clear error as a matter of law is dispositive and 'will always defeat a petition for mandamus.'" *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023) (citation omitted).

"Clear error is a highly deferential standard of review." *In re Swift Transp. Co. Inc.*, 830 F.3d 913, 916 (9th Cir. 2016). This Court "will not grant mandamus relief simply because a district court commits an error, even one that would ultimately require reversal on appeal." *Id.* (citation omitted). Instead, the Court "must have a definite and firm conviction that the district court's interpretation . . . was incorrect." *Id.* (citation omitted); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (finding where "[t]he district court weighed appropriate considerations . . . there was no clear error" to support mandamus).

Meta doesn't show clear error—it assumes it. The company takes as a given that discovery rules automatically bar depositions of high-level corporate executives unless the requesting party first shows a heightened need for one. That's wrong. Ninth Circuit precedent—which Meta fails to cite—establishes there is *no* special dispensation from civil discovery for corporate executives simply because of their status as titans of industry. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (citing Fed. R. Civ. P. 26(c)); *see Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012) (rejecting "apex doctrine" as incompatible with Rule 26(c)).

Meta did not show good cause. It didn't even try. It never showed undue burden or abuse to Mr. Zuckerberg, as Rule 26(c) requires. It simply assumed there was good cause to bar Mr. Zuckerberg's deposition because of his status as its chief executive. But requiring Meta to show good cause is not clear error, or error at all—it's what the federal rules demand.[3]

### 1.   Meta was required to show good cause for a protective order barring Mr. Zuckerberg's deposition.

Meta claims the "governing standard itself is familiar" but then misstates the standard for a protective order. Pet. at 1 (citing only district court interpretations of the "apex doctrine"). So we begin with the basics.

Rule 26(c) sets the governing standard for a protective order. The rule "was adopted as a safeguard for the protection of parties and witnesses in

---

[3]Meta's petition does not qualify for ordinary-error review. Only in "supervisory mandamus cases" involving novel legal questions of "major importance to the administration of the district courts" is it possible for a writ to issue upon a showing of an error that is not clear. *Calderon v. U.S. Dist. Ct. for N. Dist. of Cal.*, 134 F.3d 981, 984 (9th Cir. 1998) (citation omitted) (considering the proper procedure for "mixed" habeas review). Otherwise, when a petition raises an issue of first impression, it is reviewed for clear error and typically denied because "[t]he absence of controlling precedent weighs strongly against a finding of clear error." *In re Van Dusen*, 654 F.3d 838, 845 (9th Cir. 2011); *see also Medhekar v. U.S. Dist. Ct.*, 99 F.3d 325, 327 (9th Cir. 1996) ("[A] question of first impression not yet addressed by any circuit court in a published opinion . . . cannot" result in clear error by the district court).

view of the almost unlimited right of discovery given by Rule 26(b)(1)."
Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2036 (3d ed.) (Wright & Miller).
It provides, in relevant part, that a district "court may, for good cause, issue
an order to protect a party or person from annoyance, embarrassment,
oppression, or undue burden or expense" by, among other things, barring
the deposition of that individual. Fed. R. Civ. P. 26(c)(1)(A). This rule even
allows a potential deponent to challenge the need for their testimony on the
grounds that "there is no occasion for the inquiry and it cannot benefit the
party making it." Wright & Miller § 2036 (noting Rule 26(c) prohibits
disproportionate discovery).

But these objections are not given; they are earned. The rule squarely
places the burden on the party resisting discovery to show the need for
protection. "A party asserting good cause bears the burden . . . of showing
that specific prejudice or harm will result if no protective order is granted."
*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). And
the rule has long been understood to require "a particular and specific
demonstration of fact, as distinguished from stereotyped and conclusory
statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations
omitted). That means "[b]road allegations of harm, unsubstantiated by

specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."
*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025) (quoting *Beckman* for the same proposition just last month).

Rule 26(c) does not "set out . . . all of the circumstances that may require limitations on discovery or the kinds of limitations that may be needed." Wright & Miller § 2036. That would be "impossible." *Id*. "The rules, instead, permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case." *Id*. In these ways, then, Rule 26(c) protects any potential deponent—including a high-level executive—from inappropriate or improper discovery, whatever their reason may be.

But Meta doesn't want to play by the federal rules. *See* Pet. at *v* (table of contents indicating Meta doesn't ever cite Rule 26(c)). It prefers the "apex doctrine"—a judge-made rule that presumptively shields corporate bigwigs from depositions. Under Meta's preferred version of this rule, high-level corporate executives cannot be deposed unless the party *seeking* the deposition shows that the corporate executive has unique, nonrepetitive,

firsthand knowledge of the facts and has exhausted all other methods of discovery. *See* Pet. at 1. No showing from the company required.

The apex doctrine is incompatible with Rule 26(c)—which is why the only federal appellate court to address the doctrine by name in a published decision has rejected it. *See Serrano*, 699 F.3d at 902  (holding reliance on apex doctrine to grant a protective order an abuse of discretion); *see also Stratford v. Umpqua Bank*, 534 P.3d 1195, 1202 (Wash. 2023) (concluding, based on a survey of federal and state cases, that "the apex rule is not widely followed; its application is inconsistent and its acceptance is waning").[4] The Sixth Circuit rejected the apex doctrine because it "appears to assume that 'harassment and abuse' are 'inherent' in depositions of high-level corporate officers," and thus shifts the burden to the party seeking discovery, rather than "require the corporate officer"—the party resisting discovery—"to meet Rule 26(c)(1)'s requirements." *Serrano*, 699 F.3d at 901.

---

[4] The numerous state court decisions that have rejected the apex doctrine are instructive because "[m]ost States, including Washington, have adopted discovery provisions modeled on Rules 26 through 37 of the Federal Rules of Civil Procedure." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29 (1984) (citation omitted).

More importantly, the apex doctrine is incompatible with Ninth Circuit precedent interpreting Rule 26(c). *See Blankenship*, 519 F.2d at 429. In *Blankenship*, the plaintiff sought the deposition of publishing titan George Hearst in an antirust dispute. *Id*. The company sought to bar Hearst's deposition because, it argued, Hearst's knowledge about alleged price-fixing was not unique and "would be repetitious with what plaintiff had learned from other sources." *Id.* In response, the plaintiff argued that Hearst was an active publisher who "may" have had knowledge about a letter written by and addressed to others about pricing. *Id*. The plaintiff also "suggested" that Hearst "might" have information that others did not. *Id*. The district court apparently was unconvinced by the plaintiffs' showing, so it granted the protective order barring the deposition. *Id*.

This Court reversed. Rule 26(c), the Court explained, demands that the party resisting discovery show good cause: "All motions under these subparagraphs of the rule must be supported by 'good cause' and a strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship*, 519 F.2d at 429 (quoting 4 J. Moore, *Federal Practice* ¶ 26.69 at pp. 26-494 — 26-495 (2d ed. 1974)). The district court's decision to bar the deposition when the plaintiffs had not shown that Hearst had

16

unique, nonrepetitive, firsthand knowledge, this Court continued, conflicted with the federal rules' broad allowance for discovery and Rule 26(c)'s requirement that the defendant show good cause. *Id.* ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

Ignoring all this, Meta claims that a recent Ninth Circuit decision limiting when the judicial branch may compel a cabinet secretary to submit to a deposition should inform the apex doctrine. Pet. at 17 (citing *In re U.S. Dep't of Educ.*, 25 F.4th 692, 700 n.1 (9th Cir. 2022)). But that decision has no bearing here, and in fact, the Court itself took care to explain that its ruling rested on "a constitutional foundation"—an analysis "distinct from the 'apex doctrine.'" 25 F.4th at 700 n.1. And that analysis *is* distinct: The presumptive protection for high-ranking government officials is derived from a longstanding concern about the separation of powers between the executive and the judiciary. *Id.* at 700 ("Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)). The same concerns simply are not present for private witnesses: There are no official government actions at play, nor are there concerns about the

judiciary encroaching into the affairs of a co-equal branch. *See Stratford*, 534 P.3d at 1201 (explaining that "obvious differences between public officials and corporate executives" militate against extending protections from one to the other).[5]

In any event, even if the Court has the power to craft constitutional protections from discovery for government officials, that does not mean it has the authority to amend Rule 26(c) to protect corporate executives by shifting the burden to those who seek their testimony. Rule 26(c) is the product of "an extensive deliberative process involving . . . a Rules Advisory Committee, public commenters, the Judicial Conference, [the Supreme] Court, [and] Congress." *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (discussing Rule 23). Because "courts are not free to amend a rule outside the process Congress ordered," they "lack authority to substitute for" Rule 26(c)'s criteria "a standard never adopted"—be it Meta's version

---

[5] One other Ninth Circuit case mentions the "apex doctrine," but neither we nor Meta rely on it because it's a nonprecedential, unpublished memorandum opinion. *Andrich v. Glynn*, No. 24-3078, 2025 WL 1625536, at *2 (9th Cir. June 9, 2025) (affirming protective order based on pro se litigant's concessions of burden and relevance); *see* Cir. Rule 36-3(a); *see also Brown v. Comm'r of Internal Revenue*, 116 F.4th 861, 887-88 (9th Cir. 2024).

of the apex doctrine or any other testimonial privilege for high-level corporate executives. *See id.* at 622; *see generally Branzburg v. Hayes*, 408 U.S. 665, 690 n.29 (1972) (plurality opinion) (noting testimonial privileges are disfavored because so many "derogations" from a "positive general rule" that "everyone is obligated to testify when properly summoned" are "obstacle[s] to the administration of justice") (quoting 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961)).

In the end, settled legal principles make short work of Meta's mandamus petition. It was *not* "clear error" (or error at all) to *deny* Meta a protective order barring a three-hour deposition of Mr. Zuckerberg limited to certain topics when the company made absolutely no showing of burden to him and never disputed that he had relevant, personal knowledge. *See Blankenship*, 519 F.2d at 429; *Serrano*, 699 F.3d at 901-02; Fed. R. Civ. P. 26(c).[6]

Because the absence of clear error will always defeat a mandamus petition, and Meta has shown none, the Court should deny the petition.

---

[6] On the other hand, it *was* clear error to shift the burden to Plaintiffs based on the apex doctrine. *See id.* That said, Plaintiffs have not sought appellate review; Meta has, so the only question before this Court is whether the denial of a protective order was clear error. As explained, it was not.

**2.    Meta's criticisms of the district court's application of the apex doctrine could never amount to clear error and are otherwise unavailing.**

Meta characterizes (at 18) the district court's supposed clear error as an improper reliance on Mr. Zuckerberg's "status as a final decisionmaker" to determine that he was likely to have unique, relevant knowledge unavailable through less intrusive means. Meta's petition rewrites history by ignoring the fact-intensive, circumstance-specific analysis the district court performed.

Meta cannot ascribe any error, let alone clear error, to the district court's application of the apex doctrine in its favor when the court should not have shifted the burden to Plaintiffs in the first place. Indeed, it is more than ironic for Meta to complain that Mr. Zuckerberg's status as a chief executive should not be considered when the company insists his status should presumptively bar him from being deposed. If Meta thought Plaintiffs had wrongly concluded that Mr. Zuckerberg had relevant information and were improperly targeting him because of his role as CEO, then it should have backed up its position with evidence showing that Mr. Zuckerberg's testimony would not benefit Plaintiffs because he was a mere figurehead. *See, e.g., Serrano*, 699 F.3d at 901-02 (discussing instance where

Priscilla Presley's deposition was prohibited based upon her affidavit substantiating lack of relevant knowledge and burden).[7] Rule 26(c) offered Meta those protections, as it does for every witness. But Meta—despite several opportunities—did nothing to show that it was entitled to them.

In any event, the district court did not solely rely on Mr. Zuckerberg's status as CEO. It found that Mr. Zuckerberg possessed unique, relevant information, and determined that Plaintiffs had reasonably exhausted other means of obtaining that information. *See* ECF No. 967. In particular, the district court considered the FTC Consent Order and the obligations it placed upon Mr. Zuckerberg to have actual, personal knowledge about

---

[7] Instead of doing the work, Meta ratchets up its rhetoric and blames everyone else for its failures. *See* Pet. at 22-23 (claiming the district court engaged in "ipse dixit" reasoning even though it made a considered, fact-based decision); *id.* at 24 (accusing Plaintiffs of "game" playing even though it was Meta who inappropriately sought to reshuffle the deck after it dealt itself a losing hand); *id.* at 11 (quoting its own briefing to accuse Plaintiffs of "studiously avoiding" obtaining information about Mr. Zuckerberg's intent from other individuals or through other means—even though the district court found that Meta had objected to such attempts); *id.* at 20 (characterizing lawsuits over the Pixel as "meritless" while a jury found in a related case that Meta is liable for the exact conduct at issue here—using the Pixel to eavesdrop on private health communications, *see Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757-JD (N.D. Cal.), ECF No. 756 (filed August 4, 2025) (unanimous verdict for certified class of Californians and against Meta on California Invasion of Privacy Act claim)).

Meta's privacy practices. *Id.* at 2. It also considered the testimony of former Meta vice president Graham Mudd, who recalled Mr. Zuckerberg was presented with a proposal in 2021 to move to an "opt-in" only consent model for tracking third-party data, and that Mr. Zuckerberg himself had made the final decision and gave directions regarding that proposal. *Id.* at 3. This was more than enough for the district court to find that Mr. Zuckerberg was likely to have "unique first-hand knowledge of facts relevant to a claim or defense," not solely by virtue of his role as CEO of Meta, but "by virtue of his role pursuant to the FTC Consent Order and as a decision maker regarding certain privacy-related matters at issue in this case." *Id.*; *see also Pizzuto v. Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025) (explaining relevance is a "low bar" and "[d]istrict courts have broad discretion in determining relevancy for discovery purposes" (citations omitted)).

Meta's insistence (at 19-23) that the district court relied exclusively on Mr. Zuckerberg's status as a CEO therefore bears little resemblance to the proceedings below. There was no, as Meta suggests (at 19), "tautological" reasoning based on Mr. Zuckerberg's title—a criticism more appropriately leveled at the apex doctrine—but instead, a finding that followed a careful examination of facts under the particular circumstances of this case. As it

22

turns out, not every corporate executive has been court-ordered to maintain personal knowledge about company privacy programs, nor is there always available testimony that the executive witness made a final judgment call about a proposal directly relevant to the claims in the case. Those facts distinguish this case from Meta's hypothetical world (at 19) where a high-level executive lacking any knowledge is being summoned to testify, not to make claims or defenses any more or less true, but for ulterior and improper reasons.

Meta also insists (at 22) that Plaintiffs should have been required to depose other lower-level employees, like Mr. Protti, Mr. Leach, and Mr. Sherman, before deposing Mr. Zuckerberg to ensure the information he had was truly unique. *See also* ECF Nos. 1006-4, 1006-6. But the district court's reasoned determination that Plaintiffs had exhausted other sources of information—which Meta again ignores—cannot be clear error, or error at all. *See Blankenship*, 519 F.2d at 429 (rejecting the same reasoning as insufficient to *grant* a protective order). As the court explained, Mr. Protti, Mr. Leach, and Mr. Sherman were not custodians; Meta had not disclosed them until near the close of fact discovery; and Meta had previously objected to Plaintiffs' attempts to obtain similar information about Mr. Zuckerberg's

decision-making processes from another witness—Mr. Mudd. *See* ECF No. 1025 at 4-5. Meta's failure to identify these individuals in a timely fashion, the district court reasoned, could not amount to a lack of diligence from Plaintiffs. *Id.* The district court similarly considered and rejected Meta's assertion that Plaintiffs had not sought discovery about Mr. Zuckerberg and his decision-making processes, reminding Meta of the hard-fought battle to obtain Mr. Zuckerberg's custodial files two years prior. *Id.* at 5. Given these circumstances, the district court had ample reason to find that Meta had not demonstrated that these other individuals could fairly substitute for Mr. Zuckerberg on questions about Mr. Zuckerberg's decision-making, and that Plaintiffs had been diligently seeking this information throughout discovery. ECF No. 967 at 3-4.

In the end, Meta identifies no clear error or any error in the denial of a protective order. The district court "carefully and thoroughly weighed the competing interests of Meta and Mr. Zuckerberg against the showing made by plaintiffs of the need for the deposition." ECF No. 1049 at 1. The extraordinary relief of mandamus is simply not appropriate to review this "highly fact-intensive decision" regarding discovery. *In re Anonymous Online*

24

*Speakers*, 661 F.3d at 1176 (denying mandamus petition to reverse a discovery order for lack of clear error).

### B. Meta cannot establish any other reason to grant the petition.

This Court need not consider other possible reasons to grant mandamus because the absence of clear error is "dispositive." *In re Anonymous Online* Speakers, 661 F.3d at 1176. But their consideration wouldn't help Meta anyway.

Start with Meta's claim that it would be prejudiced without mandamus relief. If "[b]eing forced to stand trial despite the running of the statute of limitations on certain charges is not inherently prejudicial," then neither is being forced to sit for a three-hour deposition. *DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000) (finding no prejudice warranting mandamus from remaining in detention without bail pending trial on allegedly time-barred claims). Sitting for a deposition is, at most, one of the burdens "that are the regrettable, yet normal, features of our imperfect legal system." *DeGeorge*, 219 F.3d at 935. Because Meta has not identified the "type of prejudice that is relevant in determining mandamus relief," this condition is not met. *Id.*; *see* Pet. at 24-25 (baldly asserting that sitting for a deposition is a "harm" to Meta).

Meta also cannot show that it lacks adequate means of relief, such as a direct appeal, to attain the relief it seeks. A "direct appeal after trial, as opposed to immediate review, is the typically adequate means of review." *DeGeorge*, 219 F.3d at 935. Because, as discussed, being forced to sit for a three-hour deposition is not prejudicial, then it follows that Meta does not need immediate review. *Id.* (noting that prejudice and adequate relief "usually travel together").

Finally, as discussed, Meta can neither show that the district court's order is an "oft-repeated error, or manifests a persistent disregard of the federal rules"; or that the district court's order "raises new and important problems, or issues of law of first impression." *Bauman*, 557 F.2d at 654-55. In its petition, Meta avoids any mention of Rule 26(c) or the decisional law on it, including the published circuit-level cases that either reject the apex doctrine by name, *Serrano*, or its analysis without naming the doctrine, *Blankenship*. At best, this shows a persistent disregard of the federal rules — by Meta. But it does not establish that mandamus review is appropriate.

In all, Meta has not demonstrated any factors that might show its entitlement to the extraordinary remedy of mandamus.

## CONCLUSION

The Court should deny Meta's petition for mandamus.

Respectfully submitted,

August 5, 2025

*/s/ Andre M. Mura*

ANDRE M. MURA
HANNE JENSEN
**GIBBS MURA LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
*amm@classlawgroup.com*

JASON 'JAY' BARNES
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
*jaybarnes@simmonsfirm.com*

GEOFFREY A. GRABER
CLAIRE TORCHIANA
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
*ggraber@cohenmilstein.com*
*ctorchiana@cohenmilstein.com*

JEFFREY KONCIUS
**KIESEL LAW**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 854-4444

*koncius@kiesel.law*

BETH TERRELL
**TERRELL MARSHALL LAW GROUP**
936 North 34th Street, Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603
*bterrell@terrellmarshall.com*

*Counsel for Real Parties in Interest-Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limit in Circuit Rule 21-2(c), which limits an answer to a petition for writ of mandamus to 30 pages, exclusive of the materials listed in Rule 21(a)(2)(C) and Rule 32(f). It has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Book Antiqua font.

*/s/Andre M. Mura*
Andre M. Mura

## CERTIFICATE OF SERVICE

I certify that, on August 5, 2025, I electronically filed the foregoing document with the Clerk of Court of the United States Court of Appeals for the Ninth Circuit by using the Appellate Case Management System. I certify that all participants in this case, except the United States District Court for the Northern District of California, are registered e-filing users and that service will be accomplished by the Appellate Case Management System. I will serve the United States District Court for the Northern District of  California via mail for delivery within three calendar days.


*/s/Andre M. Mura*
Andre M. Mura