No. 25-4172

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN RE META PLATFORMS, INC.,

*Petitioner.*

META PLATFORMS, INC.

*Petitioner-Defendant,*

v.

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

JANE DOE I, JOHN DOE I, JOHN DOE II, JANE DOE II,

JANE DOE III, JOHN DOE III, JOHN DOE IV,

*Real-Parties-in-Interest-Plaintiffs.*

PETITIONER META PLATFORMS, INC.'S REPLY
IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

Andrew B. Clubok
Nicolas Luongo
LATHAM & WATKINS LLP
1270 Avenue of the Americas
New York, NY 10020

Melanie M. Blunschi
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Gary Feinerman
LATHAM & WATKINS LLP
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

*Counsel for Petitioner Meta Platforms, Inc.*

August 12, 2025

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................1

ARGUMENT ....................................................................2

I.    THIS COURT'S GUIDANCE ON THE APEX DOCTRINE IS URGENTLY NEEDED AND APPROPRIATE ON MANDAMUS ............2

II.   THE COURT SHOULD REJECT PLAINTIFFS' BROADSIDE ATTACK ON THE APEX DOCTRINE .......................................4

     A.    The Apex Doctrine Is A Well-Settled Application Of Rule 26 ...........4

     B.    There Is No Good Reason To Jettison The Apex Doctrine .................8

III.  PLAINTIFFS' CONCLUSORY DEFENSE OF THE DISTRICT COURT'S DECISION DOES NOT WITHSTAND SCRUTINY ...............12

CONCLUSION ................................................................16

# TABLE OF AUTHORITIES

## CASES

*Alberto v. Toyota Motor Corp.*,
796 N.W.2d 490 (Mich. App. 2010)....................................................5

*Allen v. Experian Info. Sols. Inc.*,
2025 WL 1174631 (W.D. Tex. Mar. 27, 2025)....................................4

*Barnes v. Sea Hawaii Rafting, LLC*,
889 F.3d 517 (9th Cir. 2018) .............................................................13

*Beeman v. Protective Life Corp.*,
2020 WL 13656058 (N.D. Ala. May 28, 2020) ................................11

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ...............................................................9

*Buffalo Seafood House LLC v. Republic Servs. Inc.*,
2024 WL 126038 (D. Ariz. Jan. 11, 2024) ...........................................5

*Calderon v. U.S. Dist. Ct.*,
134 F.3d 981 (9th Cir. 1998) .............................................................13

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,
2021 WL 12349625 (C.D. Cal. Nov. 10, 2021) .................................11

*Celerity, Inc. v. Ultra Clean Holding, Inc.*,
2007 WL 205067 (N.D. Cal. Jan. 25, 2007)................................. 2, 10

*Chao v. Aurora Loan Servs., LLC*,
2012 WL 5988617 (N.D. Cal. Nov. 26, 2012) .....................................8

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
96 F.R.D. 619 (D.D.C. 1983) ...............................................................5

*Crown Cent. Petrol. Corp. v. Garcia*,
904 S.W.2d 125 (Tex. 1995) .................................................................5

*DiLorenzo v. Costco Wholesale Corp.*,
243 F.R.D. 413 (W.D. Wash. 2007) .....................................................8

*Doble v. Mega Life & Health Ins.*,
   2010 WL 1998904 (N.D. Cal. May 18, 2010) ....................................................... 2

*Driscoll's, Inc. v. California Berry Cultivars, LLC*,
   2025 WL 776567 (E.D. Cal. Mar. 11, 2025) ....................................................... 5

*Ent. Studios Networks, Inc. v. McDonald's USA, LLC*,
   2025 WL 1090394 (C.D. Cal. Apr. 9, 2025) ....................................................... 5

*Felder v. Warner Bros. Discovery*,
   2025 WL 1718098 (S.D.N.Y. June 20, 2025) ....................................................... 4

*Finisar Corp. v. Nistica, Inc.*,
   2015 WL 3988132 (N.D. Cal. June 30, 2015) ................................................... 7, 9

*Garner v. Amazon.com, Inc.*,
   2023 WL 6038012 (W.D. Wash. Sept. 15, 2023) ............................................... 5

*GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*,
   2025 WL 1488512 (S.D.N.Y. May 23, 2025) ....................................................... 4

*Henriquez v. Cemex, Inc.*,
   2024 WL 1600663 (C.D. Cal. Jan. 18, 2024) ....................................................... 6

*In re Amend. to Fla. Rule of Civ. Proc. 1.280*,
   324 So. 3d 459 (Fla. 2021) ............................................................................... 5

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
   2025 WL 1435061 (N.D. Ill. May 19, 2025) ....................................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 10967617 (N.D. Cal. Aug. 1, 2011) ................................................... 7

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ......................................................................... 3, 9

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
   2025 WL 896412 (N.D. Cal. Mar. 24, 2025) ..................................................... 11

*In re Williams-Sonoma, Inc.*,
   947 F.3d 535 (9th Cir. 2020) ........................................................................... 3

iii

*Johnson v. Couturier*,
261 F.R.D. 188 (E.D. Cal. 2009) ...........................................................................8

*Keatley v. Union Pac. R.R. Co.*,
2024 WL 4906135 (D. Neb. Nov. 27, 2024) ......................................................4

*Kendrick v. Carter Bank & Tr., Inc.*,
2025 WL 879703 (4th Cir. Mar. 21, 2025) .........................................................7

*L.A. Alliance v. Cty. of Los Angeles*,
2023 WL 5505037 (C.D. Cal. Aug. 2, 2023) .....................................................6

*LA Terminals, Inc. v. United Nat'l Ins.*,
2022 WL 1637206 (C.D. Cal. Jan. 28, 2022) ....................................................2

*Largan Precision Co, Ltd v. Motorola Mobility LLC*,
2024 WL 4980808 (N.D. Cal. Nov. 14, 2024) ...................................................5

*Liberty Mut. Ins. Co. v. Super. Ct.*,
13 Cal. Rptr. 2d 363 (Cal. Ct. App. 1992) .........................................................5

*LionHead Glob. No 2, LLC v. Todd Reed, Inc.*,
2020 WL 10692515 (C.D. Cal. Dec. 14, 2020) .................................................8

*Mulvey v. Chrysler Corp.*,
106 F.R.D. 364 (D.R.I. 1985) .............................................................................5

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
278 F.3d 621 (6th Cir. 2002) ..............................................................................8

*Patagonia, Inc. v. Anheuser Busch, LLC*,
2020 WL 12048987 (C.D. Cal. Nov. 23, 2020) ........................................... 2, 11

*Perry v. Schwarzenegger*,
*591 F.3d 1147 (9th Cir. 2010)* ..........................................................................2

*Pinn, Inc. v. Apple Inc.*,
2021 WL 4775969 (C.D. Cal. Sept. 10, 2021) ...................................................7

*Rodriguez v. Google LLC*,
2025 WL 1871126 (N.D. Cal. June 25, 2025) ................................................5, 6

iv

*Salter v. Upjohn Co.*,
   593 F.2d 649 (5th Cir. 1979) ...................................................6

*Serrano v. Cintas Corp.*,
   699 F.3d 884 (6th Cir. 2012) .................................................10

*Shelton v. Am. Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986) ..........................................8, 10

*State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*,
   724 S.E.2d 353 (W. Va. 2012) ...............................................5

*Stratford v. Umpqua Bank*,
   534 P.3d 1195 (Wash. 2023) ................................................10

*Swann v. E. Alabama Health Care Auth.*,
   2025 WL 1671382 (M.D. Ala. June 12, 2025) ......................4

*Theriot v. Par. of Jefferson*,
   185 F.3d 477 (5th Cir. 1999) ..................................................8

*Thiessen v. Gen. Elec. Cap. Corp.*,
   267 F.3d 1095 (10th Cir. 2001) .............................................8

*Thomas v. Int'l Bus. Machs.*,
   48 F.3d 478 (10th Cir. 1995) ................................................5

*United States v. Fei Ye*,
   436 F.3d 1117 (9th Cir. 2006) ...............................................3

*United Therapeutics Corp. v. Liquida Techs., Inc.*,
   2024 WL 4791943 (D. Del. Nov. 12, 2024) ..........................5

*Whaley v. Amazon.com, Inc.*,
   2025 WL 1330553 (D.S.C. Jan. 16, 2025) ............................4

## RULES

1 Federal Rules of Civil Procedure, Rules and Commentary § 30:19
   (June 2025 update) ...............................................................11

Fed. R. Civ. P 26(b)(1) ..............................................................6

Fed. R. Civ. P. 26 ............................................................. passim

Fed. R. Civ. P. 26(a) ................................................................................1

Fed. R. Civ. P. 26(b) ................................................................................1

Fed. R. Civ. P. 26(b)(2) ...........................................................................6

Fed. R. Civ. P. 26(c) .......................................................................... 1, 4, 9

Fed. R. Civ. P. 26(c)(1) .........................................................................6, 7

## TREATISES

8A Fed. Prac. & Proc. Civ. (Wright & Miller) § 2037 & n.21 (3d ed.) ..................11

9A Fletcher Cyc. Corp. § 4663  (Oct. 2024 update) ...............................................11

## OTHER AUTHORITIES

27 C.J.S. Discovery § 26 (May 2025 update) ...........................................................11

## INTRODUCTION

Unable to defend the District Court's application of the apex doctrine, Plaintiffs urge this Court to scrap the doctrine entirely, claiming that high-level business executives deserve "*no* special dispensation" from deposition demands. Ans. 11. Plaintiffs' motivation for swinging for the fences is plain: They want legal cover to make such demands every chance they get in an effort to maximize burdens, attract public attention, and gain perceived leverage. For decades, courts across the country have recognized these dangers and required special justification for apex depositions. The Court should not jettison these crucial protections.

Plaintiffs have little to say about the traditional justifications for the apex doctrine or the sweeping consequences of ending it. They focus instead on claiming that the doctrine "is incompatible with" Federal Rule of Civil Procedure 26. Ans. 15. That is wrong. The apex doctrine faithfully implements Rule 26's requirements that discovery be "proportional," obtained from "less burdensome" means where available, and not made for the purpose of "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(b)-(c). There is nothing improper about auxiliary legal principles that guide courts' application of Rule 26 (or any other Rule) to guard against obvious risks of abuse.

This case underscores why the apex doctrine should be applied rigorously. At Plaintiffs' urging, the District Court justified Mr. Zuckerberg's deposition by

engaging in tautological reasoning that not even Plaintiffs now try to defend. Meanwhile, Plaintiffs scrupulously *avoided* obtaining evidence that would have obviated any asserted need for Mr. Zuckerberg's testimony. Mandamus is warranted.

## ARGUMENT

## I.  THIS COURT'S GUIDANCE ON THE APEX DOCTRINE IS URGENTLY NEEDED AND APPROPRIATE ON MANDAMUS

As Meta explained, district courts are split on how to properly apply the apex doctrine, and only this Court can resolve that disarray on mandamus. *See* Pet. 13-16. Plaintiffs do not contest the first point and offer no serious argument on the second.

Plaintiffs do not dispute that district courts are deeply divided as to whether a high-level business executive's status as a final decisionmaker on company policies or actions itself justifies an apex deposition. *See* Pet. 13-15. Several district courts have said yes, reasoning that "only" final decisionmakers themselves "can testify about what [they were] thinking, knew or understood" when making purportedly relevant decisions. *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048987, at *3 (C.D. Cal. Nov. 23, 2020); *see, e.g.*, *LA Terminals, Inc. v. United Nat'l Ins.*, 2022 WL 1637206, at *6 (C.D. Cal. Jan. 28, 2022); Dkt. 967 at 3-4. But others have rejected that circular reasoning, since apex executives are *always* "high-level decision maker[s]." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007); *see, e.g.*, *Doble v. Mega Life & Health Ins.*, 2010 WL 1998904, at *3 (N.D. Cal. May 18, 2010). Plaintiffs do not even mention this

2

split, much less try to reconcile the conflicting decisions reached by district courts as to Mr. Zuckerberg himself. *See* Pet. 15-16. The widespread confusion among district courts warrants guidance from this Court.

Plaintiffs offer no serious argument for why mandamus is supposedly an inappropriate vehicle for providing that much-needed guidance. *Id.* at 16-18. Plaintiffs do not dispute that interlocutory review is unavailable for discovery orders. And while they suggest in passing that Meta should pursue a "direct appeal after trial," Ans. 26, Plaintiffs ignore that Meta's challenge to Mr. Zuckerberg's deposition "would be mooted" long before then, as soon as the deposition occurs. *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 540 (9th Cir. 2020); *see SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 914 (9th Cir. 1999). Mandamus is the only feasible way for Meta to obtain appellate review of the decision below.

Plaintiffs respond that sitting for an unwarranted deposition is not "the 'type of prejudice that is relevant in determining mandamus relief.'" Ans. 25 (citation omitted). But this Court has repeatedly held that "the intrusion of [a] deposition itself" *is* the kind of "harm" that can warrant mandamus. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022); *see United States v. Fei Ye*, 436 F.3d 1117, 1123 (9th Cir. 2006) (granting mandamus relief to enforce rules "govern[ing] the taking of depositions"). Plaintiffs' position would mean that a discovery order compelling

3

a deposition could never be considered on mandamus. That is wrong. This Court's intervention on mandamus is appropriate and necessary.

## II. THE COURT SHOULD REJECT PLAINTIFFS' BROADSIDE ATTACK ON THE APEX DOCTRINE

Rather than defend the tautological reasoning adopted by many district courts, Plaintiffs take aim at the apex doctrine itself. For the first time in this litigation, they argue that the doctrine "presumptively shields corporate bigwigs from depositions" in a way that "is incompatible with Rule 26(c)." Ans. 2, 15. High-level executives, Plaintiffs insist, deserve no "special dispensation from civil discovery" whatsoever. *Id.* at 11. Plaintiffs' all-out assault on the apex doctrine fails on every level.

### A. The Apex Doctrine Is A Well-Settled Application Of Rule 26

In Plaintiffs' telling, "some courts in the Northern District of California" have gone rogue and concocted a "golden parachute for corporate officials" that violates Rule 26. Ans. 6, 14. In reality, the apex doctrine is a well-established principle that derives from Rule 26 and advances crucial interests.

Hundreds of federal district courts have applied the apex doctrine,[1] including

---

[1] *See, e.g.*, *Felder v. Warner Bros. Discovery*, 2025 WL 1718098, at *3 (S.D.N.Y. June 20, 2025); *Swann v. E. Ala. Health Care Auth.*, 2025 WL 1671382, at *2 & n.1 (M.D. Ala. June 12, 2025); *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 WL 1488512, at *1 (S.D.N.Y. May 23, 2025); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 2025 WL 1435061, at *2 (N.D. Ill. May 19, 2025); *Whaley v. Amazon.com, Inc.*, 2025 WL 1330553, at *7 (D.S.C. Jan. 16, 2025); *Keatley v. Union Pac. R.R. Co.*, 2024 WL 4906135, at *1 (D. Neb. Nov. 27, 2024);

4

dozens in this Circuit alone.[2]  Many state courts have adopted it as well.[3]  For

decades, these courts have recognized that high-level executives "can be easily

subjected to unwarranted harassment and abuse"—and that this "vulnerability"

warrants "protect[ion]" against unwarranted deposition demands.  *Mulvey v.*

*Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985).  To that end, a long line of cases

prohibits apex depositions when the executive lacks "unique personal knowledge"

and/or alternative evidentiary avenues have not yet been exhausted without success.

*Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621

(D.D.C. 1983).  Indeed, multiple circuits have affirmed protective orders barring the

deposition of high-level executives based on these principles, just without invoking

the apex doctrine by name.  *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482-84

(10th Cir. 1995) (executive lacked "personal knowledge" of disputed employment

---

*United Therapeutics Corp. v. Liquida Techs., Inc.*, 2024 WL 4791943, at *3
(D. Del. Nov. 12, 2024).

[2]  *See, e.g.*, *Rodriguez v. Google LLC*, 2025 WL 1871126, at *2 (N.D. Cal.
June 25, 2025); *Ent. Studios Networks, Inc. v. McDonald's USA, LLC*, 2025 WL
1090394, at *8 (C.D. Cal. Apr. 9, 2025); *Driscoll's, Inc. v. Cal. Berry Cultivars,
LLC*, 2025 WL 776567, at *3 (E.D. Cal. Mar. 11, 2025); *Largan Precision Co, Ltd
v. Motorola Mobility LLC*, 2024 WL 4980808, at *1 (N.D. Cal. Nov. 14, 2024);
*Buffalo Seafood House LLC v. Republic Servs. Inc.*, 2024 WL 126038, at *2 (D. Ariz.
Jan. 11, 2024); *Garner v. Amazon.com, Inc.*, 2023 WL 6038012, at *2 (W.D. Wash.
Sept. 15, 2023).

[3]  *See, e.g.*, *State ex rel. Mass. Mut. Life Ins. Co. v. Sanders*, 724 S.E.2d 353, 361-63
(W. Va. 2012); *Alberto v. Toyota Motor Corp.*, 796 N.W.2d 490, 494 (Mich. App.
2010); *Crown Cent. Petrol. Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995);
*Liberty Mut. Ins. Co. v. Super. Ct.*, 13 Cal. Rptr. 2d 363, 365-67 (Cal. App. 1992).

decision and information sought could be "gathered from other [company] personnel, for whom a deposition might have been less burdensome"); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (executive was "extremely busy" and other employees had "the most direct knowledge of the relevant facts").

Far from being incompatible with Rule 26, the apex doctrine faithfully implements the rule. Rule 26(b)(1) requires that discovery be "proportional to the needs of the case." Rule 26(b)(2) commands that a court "must limit" discovery if it "is unreasonably cumulative or duplicative," the relevant evidence can be obtained from "more convenient" or "less burdensome" sources, or the requesting party "has had ample opportunity to obtain the information." And Rule 26(c)(1) empowers courts to prevent "annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding" requested discovery—i.e., to issue protective orders. "From these components of Rule 26 has emerged the judicially-invented apex doctrine, which 'seeks to limit the potential for the discovery rules to serve as a tool for harassment'" of high-level executives. *Rodriguez*, 2025 WL 1871126, at *1.

Plaintiffs are thus wrong to claim that, by invoking the apex doctrine, "Meta doesn't want to play by the federal rules." Ans. 14. To the contrary, the doctrine "is derivative of Rule 26." *Henriquez v. Cemex, Inc.*, 2024 WL 1600663, at *3 (C.D. Cal. Jan. 18, 2024) (quoting *L.A. Alliance v. Cty. of Los Angeles*, 2023 WL 5505037, at *5 (C.D. Cal. Aug. 2, 2023)). When courts apply the doctrine, they are

6

"exercis[ing] their discretion under Rule 26(c)(1) to prohibit or limit the scope of depositions"—not acting outside of it. *Apple*, 282 F.R.D. at 263; *accord Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *2 (C.D. Cal. Sept. 10, 2021). The apex doctrine merely creates a "rebuttable presumption that the deposition of a high-ranking corporate executive" constitutes "good cause for a protective order as an annoyance or undue burden within the meaning of Federal Rule of Civil Procedure 26(c)(1)." *Kendrick v. Carter Bank & Tr., Inc.*, 2025 WL 879703, at *3 (4th Cir. Mar. 21, 2025).

This rebuttable presumption naturally "require[s] that the party seeking to depose an apex executive demonstrate that he possesses some 'unique personal knowledge' about the case." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 10967617, at *1 (N.D. Cal. Aug. 1, 2011). To be sure, some courts have held that "[e]ven when the apex doctrine is at issue," the burden of persuasion "remains on the party seeking to avoid the deposition." *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015). But quibbling about whether the party demanding an apex deposition should bear the ultimate burden of persuasion or instead an initial burden of production elevates form over substance. What matters is that apex depositions are presumptively unjustified under Rule 26—and should be permitted only in exceptional cases. *See supra* at 4-5 nn.1-3.

There is nothing unusual, let alone untoward, about auxiliary legal principles like the apex doctrine that guide the exercise of discretion under Rule 26 in

oft-recurring circumstances. For example, numerous courts apply a similar standard when faced with requests to depose an opposing party's attorney, which raise other concerns about "abuse of the discovery process." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1330 (8th Cir. 1986). First adopted by the Eighth Circuit in 1986, that standard prohibits such depositions unless "the party seeking to take the deposition has shown" that: (1) "no other means exist to obtain the information"; (2) "the information sought is relevant and nonprivileged"; and (3) "the information is crucial to the preparation of the case." *Id.* at 1327. The Fifth, Sixth, and Tenth Circuits use the same test.[4] Numerous district courts in this Circuit have followed suit.[5] This well-established application of Rule 26 is sensible and appropriate, just like the apex doctrine.

### B. There Is No Good Reason To Jettison The Apex Doctrine

Despite all of the foregoing, Plaintiffs ask this Court to scrap the apex doctrine entirely. But they offer no sound basis for taking that drastic step, which would

---

[4] *See Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 & n.15 (10th Cir. 2001).

[5] *See, e.g.*, *Chao v. Aurora Loan Servs., LLC*, 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012); *LionHead Glob. No 2, LLC v. Todd Reed, Inc.*, 2020 WL 10692515, at *2 (C.D. Cal. Dec. 14, 2020); *Johnson v. Couturier*, 261 F.R.D. 188, 193 (E.D. Cal. 2009); *DiLorenzo v. Costco Wholesale Corp.*, 243 F.R.D. 413, 415 (W.D. Wash. 2007); *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998).

8

invite unwarranted deposition demands in most any case brought against a major company. This Court should reject Plaintiffs' bid to declare open season on high-level business executives.

Citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), Plaintiffs claim the apex doctrine is "incompatible with Ninth Circuit precedent interpreting Rule 26(c)." Ans. 15. Put another way, Plaintiffs assert that district courts across this Circuit have been flouting Circuit precedent for a half-century. Not so. Yes, *Blankenship* permitted the deposition of "George Hearst, the publisher of the [Los Angeles] Herald-Examiner." 519 F.2d at 429. But that was because the plaintiff had credibly pointed to relevant information that Hearst himself "might have that others did not." *Id.* That reasoning accords with the apex doctrine's requirements that an executive have "unique firsthand, non-repetitive knowledge" that cannot be obtained from "less intrusive discovery methods." *Finisar*, 2015 WL 3988132 at *1.

Plaintiffs next cite *In re U.S. Department of Education*, 25 F.4th 692 (9th Cir. 2022), where this Court observed that analogous protections for high-level government officials "rest[] on 'a constitutional foundation'" regarding "the separation of powers between the executive and the judiciary"—and are thus "'distinct from the apex doctrine.'" Ans. 17 (quoting *U.S. Dep't of Educ.*, 25 F.4th at 700 n.1). True enough. But this Court still acknowledged that the apex doctrine

*exists*. And the distinct foundation underlying apex protections for high-level government officials does not diminish the "tremendous potential for abuse" inherent in deposition notices targeting high-level business executives—particularly executives serving at major companies defending against an endless barrage of lawsuits. *Celerity*, 2007 WL 205067, at *3; *see* Pet. 20. In addition, the risks identified by the Eighth Circuit in *Shelton* of "disrupt[ing] the adversarial system and lower[ing] the standards of the [legal] profession" associated with requests for attorney depositions likewise do not implicate separation-of-powers concerns, but they still merit special consideration under Rule 26. 805 F.2d at 1327; *see supra* at 8 & nn.4-5. The apex doctrine is fully consistent with this Court's precedents.

Looking elsewhere for support, Plaintiffs note that the Sixth Circuit and Washington Supreme Court declined to adopt the apex doctrine in *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), and *Stratford v. Umpqua Bank*, 534 P.3d 1195 (Wash. 2023). *See* Ans. 15. Neither decision is binding and, with respect, both pay short shrift to the compelling need for a rebuttable presumption against apex depositions. Even courts that have questioned "establishing hard and fast rules for when [apex] depositions are permissible" acknowledge that "deposing high-level officers of large corporate … entities imposes meaningful burdens on those entities and witnesses"—and that, "in the absence of any restrictions, sitting for depositions could quickly become a full-time job for leaders of entities that face extensive

10

litigation." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2025 WL 896412, at *1 (N.D. Cal. Mar. 24, 2025).

It is thus beyond dispute that "depositions of high-level executives 'create[] a tremendous potential for abuse or harassment,'" as countless courts have recognized. *Ceiva Logic, Inc. v. Amazon.com, Inc.*, 2021 WL 12349625, at *7 (C.D. Cal. Nov. 10, 2021); *see, e.g.*, *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048987, at *1 (C.D. Cal. Nov. 23, 2020); *supra* at 4-5 nn.1-3. Respected treatises agree on this "clear risk of abuse." 8A Fed. Prac. & Proc. Civ. (Wright & Miller) § 2037 & n.21 (3d ed.); *see* 1 Federal Rules of Civil Procedure, Rules and Commentary § 30:19 (June 2025 update); 9A Fletcher Cyc. Corp. § 4663 (Oct. 2024 update); 27 C.J.S. Discovery § 26 (May 2025 update).

Targeting high-level executives with deposition notices—particularly those who are the public faces of their companies—is an obvious way to ratchet up the disruption of litigation in the hopes of gaining leverage. *See* Pet. 20. Unlike lower- or mid-level employees, no one can cover for CEOs while they prepare and sit for depositions. And given high-level executives' wide-ranging responsibilities, it is all too easy to make a "the-buck-stops-here" argument "in virtually every lawsuit" brought against a company. *Beeman v. Protective Life Corp.*, 2020 WL 13656058, at *5 (N.D. Ala. May 28, 2020). These risks are especially acute for executives of

11

large global companies that, at any given moment, may be litigating multiple lawsuits around the world. These special dangers demand special protection.

Plaintiffs do not grapple with any of this, for their counsel want to freely hit high-level executives with deposition notices at every opportunity. A rebuttable presumption against such depositions implements the balance struck by Rule 26 between the benefits and burdens of discovery—and gives courts a much-needed tool to guard against abuse. That sensible protection is crucial, as this case well illustrates. Even when shielded by the apex doctrine, Mr. Zuckerberg has faced deposition demands, and district courts have reached inconsistent decisions about whether to permit them. *See* Pet. 15-16 (collecting examples). Gutting the apex doctrine would open the floodgates.

## III. PLAINTIFFS' CONCLUSORY DEFENSE OF THE DISTRICT COURT'S DECISION DOES NOT WITHSTAND SCRUTINY

While Plaintiffs spill considerable ink attacking the apex doctrine, they expend little effort defending the District Court's actual analysis—not to mention their own litigation conduct, which the Magistrate Judge pointedly observed evinced a "potential for abuse or harassment with respect to Mr. Zuckerberg's deposition." Dkt. 967 at 4. That is telling. Under any standard of review, and under any interpretation of Rule 26, the decision below is incorrect.

Plaintiffs invoke the "clear error" standard for ordinary mandamus cases nearly two dozen times. *See* Ans. 2, 10-12, 19-20, 23-25. But in a footnote, they

concede that "in 'supervisory mandamus cases' involving novel legal questions of 'major importance to the administration of the district courts,'" mandamus may "issue upon a showing of an error that is not clear." *Id*. at 12 n.3 (quoting *Calderon v. U.S. Dist. Ct.*, 134 F.3d 981, 984 (9th Cir. 1998)). This is just such a case. As demonstrated by the hundreds of district court decisions applying the apex doctrine, the proper standard for assessing deposition demands targeting high-level business executives is vitally important. *See supra* at 4-5 & nn.1-3. This Court has also never addressed the apex doctrine, its proper application is deeply unsettled, and the issue will evade review unless this Court intervenes on mandamus. *See* Pet. 13-18. Meta thus "need show only ordinary (as opposed to clear) error" to obtain mandamus relief. *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018)).

Regardless, Plaintiffs do not defend the circular notion that being a final decisionmaker—that is, being an apex executive—itself justifies an apex deposition. *See* Pet. 13-16. Instead, they simply assert the District Court did not engage in any such tautological reasoning. Ans. 22. That is incorrect. The Magistrate Judge acknowledged that Meta personnel other than Mr. Zuckerberg "may be knowledgeable" about the relevant "privacy-related topics," but nonetheless ordered his deposition because none of those personnel "purports to be the final decision maker." Dkt. 1025 at 3. The Magistrate Judge also stated that no alternative means of discovery existed based on the conclusory assertion that information about "how

Mr. Zuckerberg arrived at the decisions attributed to him" supposedly could not "be obtained from other witnesses," no matter how closely involved in those decisions. *Id.* at 3-4. That is a textbook example of tautology.

Plaintiffs' other arguments fare no better. Plaintiffs observe that "not every corporate executive has been court-ordered to maintain personal knowledge about company privacy programs." Ans. 23. But they do not address the fact Mr. Zuckerberg's knowledge on that score is clearly not unique: Meta Chief Privacy and Compliance Officer for Product Michel Protti is subject to the same directive and responsible for ensuring that Mr. Zuckerberg receives the required information about Meta's privacy practices. Dkt. 1006-6 ¶¶ 6-8. Plaintiffs claim that "the testimony of former Meta vice president Graham Mudd" shows that Mr. Zuckerberg alone can testify about the company's decisionmaking on "a proposal in 2021 to move to an 'opt-in' only consent model for tracking third-party data." Ans. 22. But they ignore Mudd's testimony that such decisions were driven by "consensus" among numerous Meta executives, Dkt. 999-3 at 219:20-220:4, 221:24-222:7, as well as documentary evidence showing that at least eighteen Meta personnel received internal recommendations and analysis on the "opt-in" proposal, Dkt. 1070-1 ¶¶ 3-4. Plaintiffs complain that Mr. Protti, along with Meta Vice President of Product Management Fred Leach and Meta Vice President and Deputy Chief Privacy Officer of Policy Rob Sherman, were not "timely" identified as

potential witnesses, "were not custodians," and were disclosed after Plaintiffs had taken "almost all" of their allotted depositions. Ans. 8, 23-24. That is inaccurate.[6] But more importantly, Plaintiffs' actions in discovery speak louder than the words in their answer, including: (1) seeking Mr. Zuckerberg's testimony before deposing *any* other witnesses, Dkt. 994-4 ¶ 4; (2) filing "313 requests for production" and "dozens of requests for admission and interrogatories" without making "any inquiries regarding Mr. Zuckerberg[]," Dkt. 1006-4 ¶ 7; (3) abruptly canceling Mr. Sherman's deposition, Dkt. 1070-1 ¶¶ 3-5, and (4) failing to ask Mr. Leach questions about the "opt-in" proposal, *id.* ¶¶ 9-10.

Plaintiffs are thus flat wrong to assert that Meta has not "backed up its position with evidence" that they are "improperly targeting [Mr. Zuckerberg] because of his role as CEO." Ans. 20. Meta's petition detailed at length the facts demonstrating that Mr. Zuckerberg's testimony would be duplicative and unnecessary—with multiple sworn declarations. *See* Pet. 4-6, 9-10, 22-24; Dkts. 994-4, 1006-5, 1006-6,

---

[6] As Plaintiffs well know, Mr. Leach and Mr. Sherman *were* custodians. Both were disclosed, and their documents produced, before the close of fact discovery. *See, e.g.*, Dkt. 924 at 2; Dkt. 994-4 ¶ 15. And at the time, Plaintiffs had only taken six of their twelve allotted fact depositions. Dkt. 1006-4 ¶¶ 5-6. As for Mr. Protti, Plaintiffs were obviously aware that he is one of Meta's most senior privacy executives and, like Mr. Zuckerberg, must certify Meta's compliance with the FTC Consent Order. Dkt. 1006-6 ¶ 7. This Court should be skeptical of Plaintiffs' inaccurate account of the discovery process. *See* Ans. 5 (casting Plaintiffs' own arguments in a joint letter brief as quotations from a court order) (quoting Dkt. 293 at 2).

1070-1.  The District Court's decision compelling Mr. Zuckerberg's deposition in spite of this evidence cannot stand.

## CONCLUSION

This Court should issue a writ of mandamus directing the District Court to vacate its orders compelling Mr. Zuckerberg's deposition in this case.

Dated:  August 12, 2025                    Respectfully submitted,


                                           *s/ Gary Feinerman*
Andrew B. Clubok                           Gary Feinerman
Nicolas Luongo                             LATHAM & WATKINS LLP
LATHAM & WATKINS LLP                        330 N. Wabash Avenue, Suite 2800
1270 Avenue of the Americas                Chicago, IL 60611
New York, NY 10020                         (312) 876-7700
                                           gary.feinerman@lw.com
Melanie M. Blunschi
Nicholas Rosellini                         Lauren R. Goldman
LATHAM & WATKINS LLP                        Darcy C. Harris
505 Montgomery Street, Suite 2000          GIBSON, DUNN & CRUTCHER LLP
San Francisco, CA 94111                    200 Park Avenue
                                           New York, NY 10166

                                           Elizabeth K. McCloskey
                                           Abigail A. Barrera
                                           GIBSON, DUNN & CRUTCHER LLP
                                           One Embarcadero Center, Suite 2600
                                           San Francisco, CA 94111

                                           *Counsel for Petitioner Meta Platforms, Inc.*

## CERTIFICATE OF COMPLIANCE

This reply has been prepared using Microsoft Word 14-point Times New Roman font on 8½ by 11 inch paper. The reply therefore complies with Fed. R. App. P. 32(a)(5) and (6).

Neither the Federal Rules of Appellate Procedure nor the Circuit Rules specific a page limit or word limit for a reply filed in support of a petition for writ of mandamus. For appeals, reply briefs must be no longer than half the length of principal briefs. A writ petition may not exceed 7,800 words. *See* Fed. R. App. P. 21(d)(1); 9th Cir. R. 21-2(c), 32-3. By analogy to the rules governing appeals, this reply contains 3,850 words—excluding items exempted by Fed. R. App. P. 32(f)—which is less than half the permissible length of a writ of petition.

Dated: August 12, 2025

*s/ Gary Feinerman*
Gary Feinerman

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | No. 25-4172

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Honorable William H. Orrick
United States District Court for the
Northern District of California
Courtroom 2
450 Golden Gate Ave
San Francisco, CA 94102

**Description of Document(s)** *(required for all documents)*:

PETITIONER META PLATFORMS, INC.'S REPLY IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

**Signature** | s/ Gary Feinerman     **Date** | 8/12/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                    *Rev. 12/01/2018*